# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:23-cv-02091 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, et al., | ) | Honorable Colleen R. Lawless |
| | ) | Magistrate Judge Eric I. Long |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**DISMISS FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

Following a months-long investigation and three-day hearing including live testimony before an internal hearing panel, Plaintiff John Doe ("Doe" or "Plaintiff") was found responsible for engaging in non-consensual sexual intercourse with Jane Roe ("Roe"), based on an incident Plaintiff told hearing panel members he did not remember. As a result, Plaintiff was dismissed from the University of Illinois Urbana-Champaign ("UIUC"). Plaintiff now brings claims alleging violations of Title IX, due process, and breach of contract against the Board of Trustees of the University of Illinois ("Board") and six individuals including Danielle Fleenor, Rony Die, Justin Brown, January Boten, Debra Imel, and Mariah Young (collectively, the "Individual Defendants").[1] The Complaint lacks sufficient allegations to maintain any claims against the Individual Defendants for many reasons, including: some claims are barred by sovereign immunity; the Title IX and breach of contract claims can only name the institution and not individual employees; one individual is not alleged to have done anything; and all Individual Defendants have qualified immunity from the due process claim. Also, the attempt to plead *any*

---

[1] The Complaint also lists in the caption as defendants "John Roes 1-5," but this Memorandum is filed on behalf of the specifically-named defendants.

1

due process claim against any defendant, including the Board, fails on substantive grounds because the Complaint lacks allegations creating any property or liberty interest and affirmatively alleges that Plaintiff received notice and multiple opportunities to be heard. Furthermore, Counts IV and V attempt to plead free-standing claims for declaratory judgment, which must be dismissed. For these reasons and those discussed below, pursuant to Rules 12(b)(1) and 12(b)(6), the Individual Defendants should be dismissed from this action completely, and the due process claim (Count II) should be dismissed in its entirety as against all Defendants.[2]

## FACTS ALLEGED[3]

### I.  Encounters Leading To Allegations Of Sexual Misconduct

In May 2020, the time of the underlying sexual assault at issue, Plaintiff was a student on medical leave from the Carle Illinois College of Medicine at UIUC. Compl. ¶¶ 6, 15. Plaintiff had previously been in a romantic relationship with Roe, who was also a medical student at UIUC. *Id.* at ¶ 17. Although their relationship ended in January 2020, Plaintiff and Roe continued to spend time together. *Id.* at ¶¶ 17-18. On May 6, Plaintiff was admitted to the Pavilion hospital for a six-day stay prompted by a mental health crisis. *Id.* at ¶ 19. Plaintiff was discharged from the Pavilion on May 12, 2020. *Id.* Following his discharge, Plaintiff, his parents, and Roe spent the afternoon together, and then Roe returned home. *Id.* at ¶¶ 20, 22. After Roe's departure, Plaintiff ingested Adderall and began studying until Roe invited Plaintiff to her apartment. *Id.* at ¶¶ 23-24. Upon Plaintiff's arrival, the pair hugged and kissed and entered Roe's bedroom. *Id.* at ¶ 27.

Plaintiff asserts that after he and Roe entered her bedroom, he "suffered from an episode of psychosis as a side effect of the combination of Adderall and Lexipro [sic]" which caused his

---

[2] Defendants are not seeking dismissal of either the Title IX or breach of contract claim as against the Board, and the Board is filing an answer to those counts concurrently with the filing of this motion to dismiss.

[3] Defendants strongly dispute many allegations in the Complaint but assume them to be true solely for purposes of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"memory of the events in the bedroom" to be "diminished." *Id*. at ¶ 28. A "formal complaint" Roe

filed with the Office for Student Conduct Resolution ("OSCR") against Plaintiff approximately a

year later in 2021 included assertions that:

- Plaintiff picked Roe up and took her into her bedroom, threw her on the bed, tried to kiss her while she turned her head away and said "no," took off her shorts, and while one of her arms was under her and Plaintiff was holding her other arm, he put his penis into her vagina while she was crying and saying "stop" and "no" for approximately 5-10 minutes;
- Plaintiff got off her and asked her to give him oral sex, she said "no";
- Plaintiff eventually pushed Roe down on the bed and did it again; and
- after getting off of her, Plaintiff put his hands on his head and said "oh my god [Roe], I just raped you."[4]

*Id.* at ¶ 43; Exhibit 1.

After Plaintiff and Roe engaged in intercourse, Roe asked if he had hit his head because

his pupils appeared abnormal. *Id*. at ¶ 30. Roe then took a bath while Plaintiff lay on her bed. *Id*.

at ¶ 31. Plaintiff and Roe then went to Plaintiff's home to study before returning to Roe's apartment

where they fell asleep in her bed. *Id*. at ¶¶ 32-33. The next morning, May 13, 2020, Plaintiff helped

Roe with a quiz and the pair took a photo of "Roe hugging Plaintiff with her arms and legs wrapped

around him." *Id*. at ¶ 35. Roe then informed Plaintiff that she would like time alone, and he left

her apartment. *Id*. at ¶ 36. Later that same day, Roe and Plaintiff spoke via phone. *Id*. at ¶ 37. Roe

told Plaintiff that she believed he had sexually assaulted her the previous night, and they agreed

Plaintiff could come to Roe's apartment to discuss the situation. *Id*.

---

[4] Although evaluation of a motion to dismiss for failure to state a claim is generally limited to review of the facts alleged, "[d]istrict courts may … consider … documents attached to a motion to dismiss when they are referenced in the complaint and central to the plaintiff's claim." *Lax v. Mayorkas*, 20 F. 4th 1178, 1181 n.1 (7th Cir. 2021). To the extent that such a document conflicts with the allegations of the complaint, the document controls. *See, e.g., Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). The Complaint references that formal complaints were filed against Plaintiff (by Roe) on or around June 2021 (Compl. ¶ 43) and against Roe (by Plaintiff) on February 1, 2022 (Compl. ¶155), and Plaintiff's assertions that UIUC waited until receiving each complaint to investigate and then applied different procedures to the two complaints are central to his due process claim. The documents that form each formal complaint are attached here as Exhibits 1 and 2, respectively.

While at Roe's apartment, Plaintiff and Roe lay on her bed. Roe then "grabbed Plaintiff's hand and placed it on her breast." *Id*. Plaintiff tried to move his hand, "but Roe compelled Plaintiff to keep his hand on her breast." *Id*. Roe then guided Plaintiff's "hand to other parts of her body, including her genitals." *Id*. She "then instructed Plaintiff to remove her pants and underwear and told him to perform oral sex on her." *Id*. He did so. *Id*. A few minutes after Plaintiff performed oral sex on Roe, he returned home and informed his parents that he had been accused of sexual assault relating to events the day before. *Id*. at ¶ 39. Plaintiff experienced another mental health crisis, and his parents called a UIUC staff member, Heather Wright, who came to Plaintiff's home. *Id.* Plaintiff told Wright that he had been accused of sexual assault, and Wright reported this information to UIUC's Title IX Office on May 13, 2020. *Id*. at ¶¶ 39, 40. The written report stated that Plaintiff said "that he raped a fellow student [Roe] on the evening of May 12, 2020;" that he "reported consensual kissing;" that "[h]e could not recall how the sexual activity started;" that "at some point during intercourse [Plaintiff] heard [Roe] say 'no;'" and that "[Roe] told him the following morning that he had raped her." Exhibit 3.[5]

UIUC's applicable procedures called for an investigation once a complainant requested that it begin. *Id*. at Ex. B, p. 33 ("All participating complainants have the opportunity to request that the investigation begin . . ."). Roe did not request that an investigation begin until her formal complaint was filed against Plaintiff approximately one year later, in 2021. *Id*. at ¶ 43; Ex. 1.

---

[5] The Complaint references Wright's report of the allegations to UIUC's's Title IX Office, asserts that UIUC investigated the allegations because of that report (Compl. ¶¶ 40-42) and that the manner in which UIUC considered allegations reflects bias and unfair assessments of credibility. This makes the initial report central to Plaintiff's due process claim. The report is attached here as Exhibit 3.

## II.    UIUC's Investigation Into The Allegations Against Plaintiff

After UIUC received Roe's formal complaint, it investigated the claims through OSCR and pursuant to the 2020-2021 Student Code and November 30, 2020 Student Disciplinary Procedures. *Id.* at ¶ 41, 49 n. 2. The purpose of the investigation was to determine whether Plaintiff had violated the UIUC's Sexual Misconduct Policy by committing sexual assault and domestic violence. *Id.* at ¶ 42. In investigating and adjudicating the allegations against Plaintiff, UIUC applied the definitions of sexual assault and domestic violence in its Sexual Misconduct Policy, which is contained in its Student Code, and followed the procedures set forth in Articles II and III of the Student Disciplinary Procedures ("the Procedures"). *Id.* at ¶¶ 50-51, 55-58, 79-82.

According to the Procedures, after UIUC receives a report alleging misconduct that, "if substantiated, would constitute a violation of the Student Code," it will assign the report to a case coordinator ("CC") who will "issue a written charge notice to the respondent." Pl. Ex. D. p. 7; Compl. ¶ 90b. This written notice includes: "a detailed description, including the date (if known) and location (if known), of the alleged incident(s)"; "the identity (if known) of any complainants involved in the incident(s)"; "the section(s) of the Student Code that the respondent has been accused of violating"; "an instruction for the respondent to call within five business days to schedule a meeting with the CC"; and "a statement that the university prohibits retaliation, knowingly making false statements to university officials, and knowingly submitting false information to university officials." *Id.* Nowhere in the Complaint does Plaintiff allege that he did not receive this notice or that the notice did not comply with these requirements.

Under Article II, the process for adjudicating allegations varies depending on the nature of conduct alleged and the severity of potential sanctions. Compl. ¶¶ 91-94. If allegations could lead to the respondent's suspension or dismissal, the process involves an investigation followed by

hearing before a Subcommittee on Sexual Assault. *Id.* at ¶¶ 92-93; Ex. D p. 10. The subcommittee

decision procedures are described in Section 2.06 of the Procedures. Compl. ¶¶ 93-94; Ex. D pp.

7, 10. Once a formal investigation has been initiated, the Procedures state that "[t]he respondent

(and any complainants) will be given the opportunity to provide supporting information and

documentation and to identify witnesses." Compl. ¶ 94(b); Ex. D. p. 9. After the investigation is

concluded and prior to a hearing before the subcommittee, the Procedures provide that the

respondent will receive access to and the opportunity to review the investigative materials. Ex. D,

p. 10. The Complaint asserts that the procedures for investigation followed by a hearing were

applied to Roe's complaint and lacks any allegations that Plaintiff was denied any of these

opportunities to review and respond to the charges against him.

The Procedures then provide for a live hearing before "a Panel composed of at least one

student and at least one faculty or staff member of the appropriate committee." Compl. ¶ 94(c);

Ex. D p. 11. The Procedures require that parties be provided the opportunity to challenge the

objectivity of any Panel member, and Plaintiff admits he received this opportunity. Comp. ¶ 123;

Ex. D, p. 11. The charges against Plaintiff were heard by a panel consisting of "Laurie Andrews,

faculty voting member and panel chair, 'Student 1', a student voting member; Kirstin Wilcox, a

staff voting member; and Defendant Rony Die, advisor to the committee." Compl. ¶ 126. The

Panel hearing the allegations against Plaintiff met "on or about October 29, 2021, November 4,

2021, and November 5, 2021." *Id.* at ¶ 122. The hearing included testimony from several witnesses,

as well as an opportunity for Plaintiff to speak. *Id.* at ¶ 131.

After this three-day hearing, the Panel issued a decision letter dated November 10, 2021,

finding Plaintiff responsible for violating the Student Code by engaging in non-consensual sexual

intercourse with Roe on May 12, 2020. *Id.* at ¶¶ 132-133; Exhibit 4.[6] The Panel also found Plaintiff

not responsible for domestic violence with regard to an alleged incident that occurred in 2018. Ex.

4. The Panel explained that in evaluating the credibility of the parties, it considered that Plaintiff's

statement contained "a contradiction that diminished his credibility:" First, "he claim[ed] to have

obtained consent for an encounter [when] he otherwise does not remember how it began," and

"[a]dditionally, [Plaintiff] only report[ed] memory loss around the sexual encounter and not during

other parts of May 12 and 13, 2020." Compl. ¶ 136; Ex. 4. The Panel also stated that while it did

not believe Plaintiff's statements to Wright equaled a confession or admission of a violation, it

found the conversation between Wright and Plaintiff further corroborated Roe's assertion that

Plaintiff sexually assaulted her. Compl. ¶ 135; Ex. 4. Other details from the November 10, 2021

decision letter include:

> On May 12, 2020, you (the respondent) were at the complainant's apartment, when you
> picked her up and took her to her room. You physically restrained the complainant's arm
> as you attempted to kiss her. The complainant turned her head away from you and said,
> "no." You then took off the complainant's shorts and inserted your penis into her vagina
> without consent. Non-consensual vaginal intercourse occurred for roughly five to ten
> minutes. Then there was a momentary pause when you got up and went into the bathroom.
> You then came back and reinserted your penis into the complainant's vagina without
> consent.
>
> * * *
>
> We acknowledge that during the time of the incident, the respondent had recently been
> hospitalized. The respondent reports that he had been diagnosed with Major Depressive
> Disorder with psychosis. While we received no official medical documentation
> corroborating this diagnosis, witnesses have confirmed that the respondent was not well
> during this time. After the complainant told the respondent that he sexually assaulted her,
> he repeated this claim to witness HW. We recognize that the respondent was not well
> during this conversation, and we do not believe his statements equal a confession or
> admission of a violation. However, we find the conversation between witness HW and the
> respondent to corroborate further the complainant's assertion that the respondent sexually
> assaulted her.

---

[6] The Complaint references the hearing panel's decision letter (Compl. ¶¶ 134, 135, 137) and asserts that
its contents demonstrate the unfair and biased assessment of the allegations, which makes the letter central
to the due process claim. A copy of the letter is attached here as Exhibit 4.

Compl. ¶ 135; Ex. 4.

After receiving that letter, in accordance with the Procedures that allow parties to appeal decisions by the Panel, Plaintiff "filed an appeal pursuant to the Policy." Compl. ¶ 143; Ex. D pp. 17-19. Plaintiff's appeal was denied via a January 6, 2022 letter that stated, "the sanction imposed was appropriate for the violation and consistent with sanctioning guidance, that the new materials submitted (even on the assumption they were not reasonably available at the time of the Panel's decision, which appears false) would not have changed that outcome, and that the procedural errors cited were either not errors at all or had no effect on the outcome." Compl. ¶ 143; Exhibit 5.[7]

### III. Plaintiff's Subsequent Complaint and UIUC's Investigation of His Allegations

After his appeal was denied, Plaintiff filed his own formal complaint against Roe on February 1, 2022 by meeting with OSCR staff to pursue allegations of sexual misconduct. Compl. ¶¶ 143, 155; Ex. 2. Plaintiff asserted that, on May 13, 2020:

- Roe "took my hands and placed them on her body. I remember she placed them on her breasts";
- She "continued to move my hands all over her body . . . her breast, stomach, hips";
- "and then she told me she wanted me to take her pants off and again I didn't think that was right, but admittingly I did it."
- "And then she instructed me to perform oral sex on her and so I did."

Ex. 2.[8] He had previously shared with UIUC, in October 2021, "during the investigation of Ms. Roe's claims" and just prior to the hearing on Roe's claims against Plaintiff, his belief that Roe

---

[7] The Complaint references the letter denying Plaintiff's appeal (Compl. ¶ 143) and asserts that its contents demonstrate an unfair and biased assessment of the allegations, which makes the letter central to the due process claim. A copy of the letter is attached here as Exhibit 5.

[8] The Complaint alleges that Roe "forced" Plaintiff to perform oral sex. Compl. ¶ 166. His report to OSCR involved the following: "[Investigator]: Can you talk about what compelled you to do the oral sex? [Plaintiff]: Again, so I remember . . . the way the events happened . . . again I remember her saying I need this . . . I need you to take my pants off . . . I need you to take my underwear off. And it just started going downhill for lack of better words and I don't know I just felt like I needed to listen to her." Ex. 2 at 6. As noted, to the extent that a document referenced in a complaint conflicts with the allegations of the complaint, the document controls. *See, e.g., Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006).

engaged in non-consensual sexual activity with him on May 13, 2020. Compl. ¶¶ 45, 122. Plaintiff did not request an investigation until after learning his appeal had been denied. *Id.* at ¶¶ 46, 143.

UIUC investigated once Plaintiff filed a formal complaint, and the investigative process applied to Plaintiff's complaint also followed Articles II and III of the Procedures, as had been done with Roe's complaint. *Id.* at ¶ 81. Section 2.05 of Article II includes "Case Coordinator Decision Procedures" that state "With the exception of cases in which the allegations, if true, would likely result in suspension or dismissal . . ., the CC has authority to find facts and determine whether it is more likely than not that the respondent has violated the Student Code." *Id.* at ¶ 92(a). Given the nature of Plaintiff's allegations that, unlike Roe's, did not include any forcible penetrative sexual conduct, OSCR determined that applicable sanctioning guidance "could not have resulted in dismissal based on the behavior investigated, so . . . this would be a case coordinator decision rather than a subcommittee one." *Id.* at ¶ 165. The sanctioning guidance lists the range of sanction options for specific forms of "Sexual Misconduct" as follows:

- "Sexual penetration" must be "Dismissal, 2 years before petition"; and
- "Sexual Touching/Fondling/Non-Penetration" can "Range from Conduct Probation to Dismissal, 1 year before petition" with "**Comment:** Decision-makers should consider a number of factors including the duration/intensity of the contact, area of the body, whether the contact was over or under clothing, etc."

Ex. 6 at 4.[9]

OSCR appointed investigators who conducted an investigation, including meeting with Plaintiff and interviewing Roe, and decided that case without a hearing. Compl. at ¶¶ 155, 163,

---

[9] In considering a Rule 12(b)(6) motion to dismiss, the Court may take judicial notice of documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice, including matters of public record. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977); *Scott v. Bender*, 893 F. Supp. 2d 963, 971 (N.D. Ill. 2012). The "sanctioning guidance" referenced in the Complaint (Compl. ¶ 165) is publicly available and a matter of public record. *See* https://conflictresolution.illinois.edu/resources/forms-and-guides/docs/sanctioning-guidance.pdf. A copy is attached here for convenience as Exhibit 6.

165. The investigation determined that Roe violated the policy prohibiting sexual assault by putting Plaintiff's hands on her breasts without his consent but that all other alleged sexual activity, including the oral sex, was consensual. *Id.* at ¶ 164. Plaintiff and Roe were informed of this decision via a June 23, 2022 email that stated:

- "[Roe] put [Plaintiff's] hands on her breasts without [Plaintiff's] consent. [Plaintiff] removed his hands and verbally objected to having his hands placed on [Roe's] breasts. Shortly after this exchange consensual sexual activity took place between [Roe] and [Plaintiff]."
- "It is also worth noting that, during our initial intake meeting, [Plaintiff] also alleged that he was unable to consent to the sexual activity that followed the incident described above. However, in that intake, [Plaintiff's] description of the encounter clearing indicated that he understood the nature, fact, and extent of the sexual activity and chose to participate. Therefore, as this would not constitute a policy violation, these allegations were not included in the official charge notice."

Ex. 7 at 1-2.[10] Roe received the sanction of "Conduct Probation," which is a listed option for non-penetrative sexual touching in the sanctioning guidance. Exs. 6, 7.

## IV.    This Lawsuit

On April 18, 2023, Plaintiff filed this Complaint against the Board and Individual Defendants. The Complaint asserts five counts against all defendants: violation of Title IX of the Educational Amendments of 1972 ("Title IX") (Count I); violation of Plaintiff's right to Due Process under the Fourteenth Amendment (Count II); a state law claim for breach of contract (Count III); and two independently-pled claims for "declaratory judgment" (Counts IV and V).

---

[10] The Complaint references the June 23, 2022 email deciding Plaintiff's claim against Roe (Compl. ¶164) and asserts that its contents demonstrate unfair and biased assessment of the allegations, which makes the letter central to the due process claim. A copy of the letter is attached here as Exhibit 7.

## ARGUMENT

### I.      Legal Standard

A motion to dismiss under Rule 12(b)(1) asserts that the Court does not have jurisdiction over some or all of the subject matter of the complaint. FED. R. CIV. P. 12(b)(1). "In the face of the motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of persuading the Court that subject-matter jurisdiction exists." *Lohrasbi v. Bd. of Trs. of Univ. of Ill.*, No. 12-3105, 2014 WL 12743795, at *2 (C.D. Ill. Feb. 6, 2014); *see* FED. R. CIV. P. 12(h)(3).

A motion under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014). To survive a Rule 12(b)(6) motion to dismiss, a complaint must be supported by allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court must accept the well-pleaded allegations in the complaint as true; however, legal conclusions and conclusory statements are not taken as true. *Ashcroft*, 556 U.S. at 678. Where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has not shown that the plaintiff is entitled to relief as is required by Rule 8. *Id.* at 679. Further, "Rule 12(f) provides that a district court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Delta Consulting Grp., Inc., v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (quotations omitted).

### II.     This Court Lacks Jurisdiction Over Several Claims that Must Be Dismissed Pursuant to Rule 12(b)(1).

#### A.  Plaintiff's due process claim (Count II) against the Board must be dismissed under Rule 12(b)(1).

Plaintiff's due process claim against the Board must be dismissed in its entirety for lack of jurisdiction pursuant to Rule 12(b)(1). The Board, as part of the State, is not a "person" capable of

being sued under 42 U.S.C. § 1983. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 403 (7th

Cir. 2018); *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 391 (7th Cir. 2020). This also applies

to claims under § 1985. *See Williamson v. Ind. Univ.*, 345 F.3d 459, 463 (7th Cir. 2003). Further,

§ 1988 does not create an independent cause of action. *Moor v. County of Alameda*, 411 U.S. 693,

702 (1983).

In addition, the Eleventh Amendment bars federal lawsuits against state agencies, including

state universities and their governing bodies, and official-capacity claims against state officials.

*Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012). There are three exceptions to

this sovereign immunity bar: (1) Congress can validly abrogate a state's immunity; (2) a state can

consent to suit; and (3) private parties can sue individual state officials for prospective relief to

enjoin ongoing violations of federal law (known as the *Ex parte Young* doctrine). *Id.* at 882. None

of these exceptions apply to Plaintiff's claim against the Board. *See Carmody*, 893 F.3d at 403

("This constitutional immunity extends to the Board of Trustees of the University of Illinois.").

Thus, Plaintiff's due process claim against the Board is barred by the doctrine of sovereign

immunity and must be dismissed.

> **B. Plaintiff's official-capacity due process claim against the Individual Defendants for monetary damages is improper and must be dismissed pursuant to Rule 12(b)(1).**

With regard to Plaintiff's due process claim against the Individual Defendants in their

official capacities – the *Ex parte Young* doctrine permits such claims *only* for prospective relief to

enjoin an ongoing violation of federal law. *See Mutter*, 17 F. Supp. 3d at 758. Thus, Plaintiff's

official-capacity claim against the Individual Defendants for compensatory and punitive damages

is barred by the Eleventh Amendment and must also be dismissed under Rule 12(b)(1). *See id.*;

*Carmody*, 893 F.3d at 403; *Council 31*, 680 F.3d at 882-83; *Haynes v. Ind. Univ.*, 902 F.3d 724, 731-32 (7th Cir. 2018).[11]

### C. Plaintiff's individual-capacity claims against the Individual Defendants for monetary damages are barred by sovereign immunity and must be dismissed pursuant to Rule 12(b)(1).

Plaintiff's claims for monetary damages against the Individual Defendants in their individual capacities must be dismissed under Rule 12(b)(1) as barred by sovereign immunity. A plaintiff cannot "seek monetary relief from state employees in their *individual* capacities *if* the suit demonstrably has the identical effect as a suit against the state." *Haynes*, 902 F.3d at 732 (quotations omitted) (emphasis in original). Thus, the Seventh Circuit has repeatedly found that sovereign immunity defeats a claim for damages against university employees in their individual capacities where the plaintiff sought damages for an injury related to his employment, the employees were not parties to the employment contract in their individual capacities, and the Seventh Circuit accordingly found it "inescapable that any resulting judgment will be paid by the state." *Id*. (quoting *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003)). Here, as in *Haynes* and *Omosegbon*, Plaintiff's claims arise from his alleged contract with UIUC; the Individual Defendants were not party to this contract; and there is "no reason to believe that [the Individual Defendants], rather than [UIUC], would foot the bill for a resulting judgment." *Id*. at 732.

---

[11] Although not a fact mentioned in the Complaint, Defendants would like to inform the Court that Individual Defendants Rony Die, Justin Brown, and Debra Imel are no longer employed by the University and therefore do not have official capacities in which they can be sued.

13

### III.   The Individual Defendants Must Be Dismissed From Plaintiff's Title IX and Breach of Contract Claims Pursuant to Rule 12(b)(6).

#### A.   Plaintiff's Title IX claim against the Individual Defendants fails because there is no individual liability under Title IX.

Count I asserts a Title IX claim. Title IX prohibits education programs or activities receiving federal financial assistance from discriminating on the basis of sex. 20 USC § 1681. "Title IX reaches institutions and programs that receive federal funds, which may include nonpublic institutions, but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (citations omitted). As such, there is no individual liability under Title IX. *See id.*; *Eilenfeldt v. United C.U.S.D. #304 Bd. of Educ.*, No. 4:12-cv-04029-SLD-JAG, 2013 WL 12248080, *5 (C.D. Ill. Mar. 25, 2013) (citing *Smith v. Metro. Sch. Dist. Perry Twp*., 128 F.3d 1014, 1019 (7th Cir. 1997)). Count I should be dismissed with prejudice as to the Individual Defendants.

#### B.   Plaintiff cannot state a breach of contract claim against the Individual Defendants.

In Count III, Plaintiff asserts a claim against all Defendants for breach of contract under Illinois law.[12] To state a claim for breach of contract, Plaintiff must allege "(1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) plaintiff performed his contractual obligations, and (4) resultant damages." *Doe v. Columbia Coll. Chi.*, 933 F. 3d 849, 858 (7th Cir. 2019). Plaintiff's breach of contract claim is based on his assertions that "a contractual relationship existed between [him] and [UIUC]," and, more specifically, that UIUC made certain promises in its Student Code, Sexual Misconduct Policy, and Student Disciplinary Procedures. Compl. ¶¶ 345-46, 349, 353, 363. Plaintiff does not allege, nor can he allege, that he

---

[12] Count V, though labeled as a "declaratory judgment" claim, also seeks to redundantly plead a breach of contract claim and should be dismissed for the reasons discussed at Section VIII, below.

had a contractual relationship with any of the Individual Defendants related to UIUC's disciplinary proceedings. Accordingly, Count III must be dismissed against the Individual Defendants. *See, e.g., Colburn v. Trs. of Ind. Univ.*, 739 F. Supp. 1268, 1302 (S.D. Ind. 1990) (granting summary judgment on breach of implied contract claim against individual defendants where it was undisputed that the individual defendants were not parties to any such contract).

## IV. Plaintiff's Individual-Capacity Claims Against the Individual Defendants Seeking Injunctive Relief Must be Dismissed Pursuant to Rule 12(b)(6).

Plaintiff's claims for injunctive relief against the Individual Defendants in their individual capacities must be dismissed pursuant to Rule 12(b)(6). As noted, under the *Ex parte Young* doctrine, a plaintiff may only pursue a claim for prospective injunctive relief to enjoin an ongoing violation of federal law by suing a state official in his *official* capacity. *See Council 31* at 882; *Ameritech Corp. v. McCann*, 297 F.3d 582, 585-86 (7th Cir. 2002). Plaintiff cannot seek injunctive relief from the Individual Defendants in their individual capacities because as private individuals, the Individual Defendants could not grant such relief. *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989); *Ameritech Corp.*, 297 F.3d at 586 ("vindicating federal rights and holding state officials responsible to federal law [] cannot be achieved by a lawsuit against a state official in his or her individual capacity"). Because Plaintiff cannot seek injunctive relief against the Individual Defendants in their personal capacities as a matter of law, Plaintiff's individual capacity claims against the Individual Defendants for injunctive relief fail to state a claim for which relief can be granted and must be dismissed pursuant to Rule 12(b)(6).

## V. The Individual Defendants Are Entitled to Qualified Immunity and Must Be Dismissed from All Claims Against Them in Their Individual Capacities Pursuant to Rule 12(b)(6).

Plaintiff brings individual-capacity claims against Individual Defendants Fleenor, Die, Brown, Boten, Imel, and Young. Compl. ¶¶ 8-13. State employees sued in their individual capacity

"are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 583 U.S. __, 138 S. Ct. 577, 589 (2018). With respect to the first element, because Plaintiff has not adequately pled facts that support any violation of due process (as discussed below) and cannot bring Title IX claims against Individual Defendants (as discussed above), the Individual Defendants did not violate any statutory or constitutional right and are entitled to qualified immunity. *See id*.

With respect to the second element, even if Plaintiff had sufficiently alleged facts that could support a claim that his constitutional rights were violated by asserting a property or liberty interest in the student dismissal context, the contours of the property and liberty interests for student dismissals were not "clearly established" at the time of his dismissal. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). For instance, Plaintiff cannot show that he had a clearly established property interest in his education. As recently as 2019, the Seventh Circuit noted that no student had *ever* "successfully shown" a property interest in their education. *Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019). Similarly, where Seventh Circuit precedent has repeatedly "rejected the proposition that an individual has a stand-alone property interest in an education at a state university," a property interest in such an education could not have been clearly established at the time Plaintiff was disciplined. *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013). Plaintiff also cannot show that he had a "clearly established" liberty interest. Courts in this Circuit have held, as recently as this year, that "the contours of the disclosure requirement" of the stigma-plus test "have not been precisely defined." *Doe v. Purdue Univ.*, No. 2:17-cv-33-JPK, 2023 WL 1991698, at *2 (N.D. Ind. Feb. 14, 2023); *see also Purdue Univ.*, 928 F.3d at 665-666 ("Because this is our first case addressing whether university discipline deprives

a student of a *liberty* interest, the relevant legal rule was not 'clearly established,' and a reasonable university officer would not have known at the time of [Plaintiff's] proceeding that her actions violated the Fourteenth Amendment.") (emphasis original). If an essential element of a liberty interest claim is still not precisely defined in this context, it cannot possibly have been clearly established at the time of Plaintiff's early 2022 dismissal.

Because Plaintiff has failed to plead a due process claim and cannot plead a Title IX claim against the Individual Defendants or show that the Individual Defendants violated a clearly established right, these claims against the Individual Defendants should be dismissed based on qualified immunity.

### VI.    All Claims Against Defendant Danielle Fleenor Must be Dismissed.

In addition to the reasons stated above, this Court should recognize the absence of *any* allegations regarding Defendant Danielle Fleenor. The requisite pleading standard requires Plaintiff to allege facts that permit the Court "to infer more than the mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. Plaintiff has not met this standard for Defendant Fleenor. The Complaint lacks even a single allegation about Fleenor that relates to Plaintiff's dismissal or the investigation and adjudication of Roe's charges against Plaintiff or Plaintiff's charges against Roe, much less a plausible allegation that Fleenor engaged in any misconduct. *See Ashcroft*, 556 U.S. at 678-79; *see also Hall v. Moleneiro*, No. 19-CV-1135-JBM, 2019 WL 3325788, at *2 (C.D. Ill. July 24, 2019) ("merely naming a defendant in the caption is insufficient to state a claim"); *Gekas v. Vasiliades*, No. 10-3066, 2010 WL 2925951, at *2 (C.D. Ill. July 22, 2010) (granting motion to dismiss in favor of certain defendants where there were no allegations of misconduct against those individuals in the complaint); *see also Jones v. Butler*, No. 14-CV-00846-NJR, 2014 WL 3734482, at *2 (S.D. Ill. July 29, 2014) ("Insofar as the narrative references

17

various actors by job title, the Court cannot merely cross-reference the named defendants and job titles"). Accordingly, Plaintiff has failed to state any actionable claims against Defendant Fleenor.

## VII.   Plaintiff Fails to State a Due Process Claim Against Any Defendant as a Matter of Law.

Plaintiff's due process claim must also be dismissed under Rule 12(b)(6) as against all Defendants, including the Board, for failure to state a claim. There are two steps in evaluating a procedural due process claim: first "the court must identify the protected property or liberty interest at stake," and second the court "must determine what process is due under the circumstances." *Charleston*, 741 F.3d at 772. Not only has Plaintiff failed to properly identify a property or liberty interest, but he has also failed to show that he did not receive sufficient process with respect to his dismissal from UIUC. Therefore, his due process claim should be dismissed.

### A.  Plaintiff has not properly alleged a property interest.

The Complaint alleges that Plaintiff "had a constitutionally protected property interest in his degree," Compl. ¶ 331, but the Seventh Circuit "has rejected the proposition that an individual has a stand-alone property interest in an education at a state university, including a graduate education." *Charleston*, 741 F.3d at 772. To properly allege a property interest, Plaintiff must show "that he has a *legally protected entitlement* to his continued education at the university." *See id.* at 773 (emphasis original).[13] Plaintiff can establish this legally protected right by specifically identifying "an express or implied contract with the medical school." *See id*. However, the Seventh Circuit has emphasized that "it is not enough for a student to merely state that such an implied contract existed." *Id*. Rather, "the student's complaint must be specific about the source of this

---

[13] To the extent Plaintiff premises his due process argument on the complaint he brought against Roe, he fails to allege that he had any property or liberty interest related to the investigation and adjudication of his own allegations against someone else.

implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id*.

Here, Plaintiff vaguely references an "express and implied contractual relationship between the University of Illinois and Plaintiff." Comp. ¶ 325. In *Charleston*, the Seventh Circuit found a more specific allegation, which referenced by name the university's Student Disciplinary Policy, still failed to meet the standard because the plaintiff did "not describe the specific promises that the university made to him." 741 F.3d at 773. Further, the Seventh Circuit has made clear that Plaintiff cannot establish a property interest in UIUC's disciplinary procedures. In *Charleston*, the Seventh Circuit emphasized that it had "rejected similar claims of an interest in contractually-guaranteed university process many times," reiterating that "a plaintiff does not have a federal constitutional right to state-mandated process." *Id*. (quotations omitted); *see also Mutter*, 17 F. Supp. 3d at 759 (finding Plaintiff failed to identify a contractual promise where he cited to the University of Illinois at Chicago's "Introduction to the Student Disciplinary Handbook."). Because Plaintiff fails to identify a specific contractual promise by UIUC which gives rise to a property interest in his continued education, he has failed to state a claim on which relief can be granted.

**B.  Plaintiff has not properly alleged a liberty interest.**

Plaintiff also fails to properly allege a liberty interest. To allege a liberty interest, Plaintiff must satisfy the "stigma-plus test," which means he "must show (1) that the state disclosed *false* information that damaged his reputation, (2) that the reputational harm made it virtually impossible for him to find employment in his chosen profession, *and* (3) that his legal status was altered, depriving him of a previously held right." *See Doe v. Trs. of Ind. Univ.*, No. 120-cv-00123-JRS-DML, 2021 WL 2213257, at *2 (S.D. Ind. May 4, 2021), *appeal dismissed*, No. 21-2018, 2021 WL 5917581 (7th Cir. Sept. 7, 2021) (quotations omitted) (emphasis added). Plaintiff fails to meet both the first and second criteria required under the stigma-plus test.

First, although Plaintiff makes the conclusory allegation that Defendants caused "damages to his reputation," Comp. ¶ 340, the Complaint lacks any allegations that Defendants have told anyone about the charges against him or his expulsion. Even if they had, the truth of Plaintiff's expulsion means that this disclosure could not form the basis of a liberty interest. Where potential disclosure of information is "voluntary and speculative," a stigma-plus claim cannot survive. *Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2023 WL 1991698, at *2 (N.D. Ind. Feb. 14, 2023) (referencing *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997)); *see also Doe v. Trs. of Ind. Univ.*, No. 1:20-CV-02006-JRS-MJD, 2020 WL 7028030 at *5 (S.D. Ind. Nov. 30, 2020) ("[Plaintiff] claims that his expulsion from medical school inflicted on him reputational damage. However, [Plaintiff's] claim in a liberty interest is weak, because [Plaintiff] has not pointed to any state disclosure in this case."). Even if Plaintiff had adequately alleged that UIUC publicized his expulsion, he still would fail to state a liberty interest. In *Trustees of Indiana*, the court held that a mark on the plaintiff's transcript stating that he was on disciplinary suspension was true, and, therefore, did not satisfy the stigma-plus test, even if the mark "inescapably implie[d] that [Plaintiff] did something wrong that was worthy of discipline." *Trs. of Ind. Univ.*, 2021 WL 2213257, at *5; *see also Purdue Univ.*, 2023 WL 1991698 at *8 (the "statement must be false"). Plaintiff's failure to satisfy the first prong of the stigma-plus test means he has failed to state a liberty interest.

The Complaint also fails to satisfy the second prong of the stigma-plus test. Plaintiff states that his expulsion resulted in "a significantly lower probability of being admitted to another university," which is a far cry from the "virtually impossible" standard stated in *Trustees of Indiana*. Comp. ¶ 341; *see Trs. of Ind. Univ.*, 2021 WL 2213257, at *2. Similarly, in *Olivieri*, the Seventh Circuit emphasized that a deprivation of liberty claim can be brought when information

has been publicized which has "foreclosed [plaintiff's] freedom to take advantage of other employment opportunities." (quotations omitted) (cleaned up). 122 F.3d at 408. Here, Plaintiff fails to allege that future employment will be "virtually impossible" or that his opportunities are "foreclosed," and therefore fails to state a liberty interest. *See Trs. of Ind. Univ.*, 2021 WL 2213257, at *2 (quotations omitted); *see also Olivieri*, 122 F.3d at 408.

Plaintiff's failure to meet two of the requirements of the stigma-plus test requires dismissal of the due process claim.

### C.  Plaintiff has not alleged he did not receive sufficient process.

Even if the Court finds that Plaintiff had alleged a property or liberty interest, his due process claim still fails because he has not alleged any actionable deprivation of such interest.

### 1.  Plaintiff received adequate notice and multiple opportunities to be heard.

Due process requires that a plaintiff receive notice and the opportunity to be heard. *See Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Here, Plaintiff does not allege that he did not receive adequate notice of the allegations against him. So, the question is whether he was heard. Plaintiff's allegations establish that he had multiple opportunities to be heard with regard to Roe's complaint against him, including the opportunity to present evidence and his side of the story directly to the investigators, the hearing panel deciding his case, and the appellate officer. Specifically, Plaintiff alleges he was interviewed by the investigators; he submitted evidence including pictures and text messages; a formal hearing was held over three days before a panel of the Subcommittee on Sexual Misconduct, in which Plaintiff, Roe, and other witnesses participated; and Plaintiff submitted an appeal of the Panel's decision. Compl. ¶¶ 121, 122, 126, 131, 139, 143. Plaintiff's argument thus appears to be that he was denied due process in

his disciplinary proceeding because UIUC deviated from its procedures. That cannot support a due process claim.

As previously discussed, the Seventh Circuit has repeatedly held that "a plaintiff does not have a federal constitutional right to state-mandated process." *Charleston*, 741 F.3d at 773. Put another way, "it may have been unfair for the university not to follow its own procedures in [Plaintiff's] case, but it was not unconstitutional." *Id*. at 774. Although Defendants dispute Plaintiff's assertion that they did not follow their own procedures, for the purposes of Plaintiff's due process claim it does not matter. Plaintiff did not have a constitutional right to the procedures UIUC created. In addition, the applicable procedures were followed. Specifically, Articles II and III of the November 30, 2020 Student Disciplinary Procedures, which were in effect at the time Roe's "formal complaint" was made in May 2021, called for an investigation, a hearing, and an appeal, all of which Plaintiff was offered and in which he participated. The Complaint's effort to suggest that UIUC was required to apply the "Title IX procedures" in Appendix D of the Student Disciplinary Procedures, rather than Articles II and III, ignores the specific language of the Appendix D defining what constitutes "Title IX Sexual Harassment." Compl. ¶ 49 n. 2;  Ex. D, p. 40. The definition plainly requires the conduct at issue to occur on campus, within a UIUC educational program. Ex. D, p. 40.  The sexual interactions between Plaintiff and Roe occurred at an off-campus apartment outside of any educational program or activity. Accordingly, the procedures in Appendix D were not applicable here, and UIUC's engagement of Article II and III to adjudicate the claims involved was both correct and not capable of supporting a due process claim.

In addition, although Plaintiff did not have a constitutional right to Defendants' procedures, he did have a right to notice and an opportunity to be heard, which clearly occurred. Plaintiff

received ample notice of the allegations against him when the formal complaint was filed in June 2021. Comp. ¶ 43. He received extensive opportunities to be heard during a three-day live hearing complete with witness testimony and direct opportunities for Plaintiff himself to speak, after first presenting his statements during an investigative interview. *Id.* at ¶¶ 122, 131. Plaintiff's disagreement with the Panel's decision does not mean that he did not receive sufficient process.

### 2. The procedures applied were fundamentally fair and there was no bias.

Furthermore, Plaintiff attempts to cast the procedures applied to him as "fundamentally unfair" or "biased," but neither assertion supports a viable due process claim. With respect to basic fairness, Plaintiff alleges an entitlement to "fundamentally fair procedures to determine whether he was responsible for the alleged sexual misconduct involving Jane Roe" and "process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing." Comp. ¶¶ 332, 333. That is exactly what happened, as the case *against* Plaintiff included clear notice of the accusations against him, multiple opportunities to be heard during his interview and at a hearing, and an appeal process.

To the extent Plaintiff asserts "unfairness" because the case against him involved a hearing while the case against Roe did not, such "unfairness" cannot support a due process claim because Plaintiff actually received *more* process and more opportunities to defend himself than Roe did. Also, the reason for the different processes applied is the obvious distinction between the severity of the alleged conduct. Plaintiff was accused of holding Roe down, removing her shorts, and engaging in penetrative intercourse against Roe's will while she cried and said "no" and "stop," and then doing so again. That was severe. In contrast, Roe was accused of non-penetrative sexual misconduct in placing Plaintiff's hands on her breasts over her clothes and asking Plaintiff to perform oral sex on her, which he chose to do. That was much less severe. The applicable

procedures expressly allow for a hearing if suspension/dismissal is a potential outcome, and no hearing if less discipline is in play. Compl. at ¶ 92(a); Ex. 6 at 4. There is nothing unfair (especially to Plaintiff) about granting him a full-blown hearing to defend himself when dismissal was clearly a possible sanction (indeed, this was required by the applicable sanctioning guidance for penetrative sexual misconduct) and not providing Roe a hearing to defend herself when the nature of accusations against her implicated lesser sanctions. Instead, this approach aligns with Seventh Circuit jurisprudence holding that "what is fundamentally fair is always a context-specific inquiry" that "depends on a number of factors, including the severity of the consequence." *Doe v. Purdue Univ.,* 928 F. 3d at 653; *see also Doe v. Trs. of Ind. Univ.,* 496 F. Supp. 3d 1210, 1219 (S.D. Ind. 2020) ("university must provide stronger safeguards where more severe consequences are at stake, such as longer-term suspensions or expulsions"). Count II cannot survive dismissal based on general assertions of fundamental unfairness as a matter of law.

Similarly, Plaintiff's general assertions of "bias" cannot stave off dismissal. As a preliminary matter, the Seventh Circuit has held that courts should "presume that administrators are honest and impartial." *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016). The presumption of honesty and impartiality may be rebutted, "but the burden of rebuttal is heavy indeed: To carry that burden, the party claiming bias must lay a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable." *Id*. Here, Plaintiff has failed to carry that heavy burden.

Instead, the Complaint alleges generally the existence of "general bias throughout the University and implicit in its policies and procedures" and that individuals who found him responsible for sexual misconduct were biased. Comp. ¶¶ 127-128, 335-337. There are no allegations that anyone deciding Plaintiff's case had any pecuniary interest in its outcome or any

prior connection of any kind to Plaintiff (or Roe for that matter). *See Hess,* 839 F.3d at 675 (explaining that, to overcome presumption of absence of bias, "plaintiff typically must show that the adjudicator had a pecuniary interest in the outcome of the case, or that he was previously the target of the plaintiff's abuse or criticism") (internal citation omitted). Rather, Plaintiff alleges only that hearing panel participants were biased as follows: Defendant Die was biased against men based on allegations from a previous lawsuit;[14] Student 1 was biased because he tweeted support for survivors of sexual assault and sold stickers benefitting RAINN; and Kristin Wilcox tweeted criticizing masculinity and mansplaining. Compl. ¶¶ 127-28. There is no basis for attributing bias to someone just because they were previously alleged to have been discriminatory in a lawsuit. And, courts have noted that "merely being a feminist or researching topics that affect women does not support a reasonable inference that a person is biased." *Doe v. Miami Univ.*, 882 F.3d 579, 601 (6th Cir. 2018).

Similarly, in *Gomes v. University of Maine System*, the court determined there was no bias capable of supporting any due process concern where the Chair of a Hearing Committee

> "was a board member of the Rape Response Services of Penobscot and Piscataquis Counties, [...] a sexual assault victim advocacy organization, [and] had been affiliated with and supported other rape response and victim advocate organizations, and had participated in a number of other organizations such as the Safe Campus Task Force and the Women's Studies Advisory Committee.".

365 F. Supp. 2d 6, 29 (D. Me. 2005). The court explained this determination, noting that:

> "There is not exactly a constituency in favor of sexual assault, and it is difficult to imagine a proper member of the Hearing Committee not firmly against it. It is another matter altogether to assert that, because someone is against sexual assault, she would be unable to be a fair and neutral judge as to whether a sexual assault had happened in the first place."

---

[14] Defendants believe Plaintiff is referring to either *Malhotra v. Univ. if Ill. at Urbana-Champaign*, No. 2:21-cv-02220, 2022WL 3576242 (C.D. Ill. Aug. 18, 2022), in which the court dismissed the allegations against all defendants, including Die, or *Doe v. Bd. of Trs. of Univ. of Ill.*, No. 17-cv-2180, 2018 WL 11269804 (C.D. Ill. July 24, 2018) in which the court granted summary judgment to the University. The Defendants are unaware of Defendant Die ever being found responsible for gender discrimination.

*Id.* at 31-32. Moreover, courts tend to require far more extreme allegations than those offered by Plaintiff to find university officials were biased. For example, the Sixth Circuit found bias where a panel member told a Title IX respondent, "I'll bet you do this [i.e., sexually assault women] all the time." *Miami Univ.*, 882 F.3d at 601; *see Doe v. Cummins*, 662 Fed. App'x 437, 447 (6th Cir. 2016) (finding no due process violation where complainant gave a victim impact statement calling respondent "a rapist" and saying he was "going to Hell."). Similarly, in *Doe v. University of Mississippi*, the court found bias where a member of the disciplinary panel "had previously mocked the defenses of men accused of sexual assault." 361 F. Supp. 3d 597, 611 (S.D. Miss. 2019).

Here, Plaintiff's allegations about the supposed bias of the panel members at most shows that these individuals were feminists and/or opposed to rape. This is a far cry from the "specific foundation of prejudice or prejudgment" required to overcome the presumption of honesty and impartiality. Because Plaintiff has failed to allege facts that overcome this presumption, his allegations of bias cannot save Count II from dismissal.

**VIII.   Plaintiff's Declaratory Judgment Claims (Count IV and Count V) Should Be Dismissed Pursuant to Rule 12(b)(6).**

In Count IV, Plaintiff asserts a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), against all defendants. The DJA provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The plain language of the DJA is discretionary: the DJA states that a court "*may* declare the rights and other legal relations of any interested party, … not that it *must* do so." *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007); *see also Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 377-78 (7th Cir. 2010). "[T]his statutory language has

long been understood to confer on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Amling v. Harrow Indus., LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (quoting *MedImmune*, 549 U.S. at 136).

As an initial matter, Count IV should be dismissed because the DJA does not create an independent cause of action but, rather, provides only an additional form of relief. *See Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021). "Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016) (quotation omitted). Because Count II fails as a matter of law for the reasons set forth above and declaratory judgment is not an independent action, Plaintiff's requests for relief in Count IV related to his due process claim in Count II must also be dismissed.

Moreover, dismissal of Counts IV and V in their entirety is appropriate here because they are duplicative of Plaintiff's substantive claims. Count IV asserts that Defendants "committed numerous violations of Plaintiff's rights as set forth [in the Complaint]," which have allegedly damaged his future educational and career prospects, and requests that this Court accordingly declare that the outcome of UIUC's proceeding regarding Roe's complaint should be reversed, Plaintiff's disciplinary record should be expunged, Plaintiff should be reinstated to UIUC as a student in good academic standing, and UIUC's procedures relating to the adjudication of allegations of sexual misconduct are unconstitutional. Compl. ¶¶ 357-58, 360. Count IV thus seeks a declaration on the same substantive issues raised in Counts I-III of the Complaint. Count V asserts only that "the University of Illinois created expressed and implied contracts" and that "Defendant breached its express and/or implied contract with Plaintiff by failing to follow the University's written policies and procedures" in the same manner as alleged in Count III. *Id.* at ¶¶

362-363. Count V thus seeks a declaration on the same substantive issues raised in Count III. Courts routinely dismiss declaratory judgment actions where they are similarly duplicative of the underlying substantive claims. *See Harris v. Rust-Oleum Corp.*, No. 21-cv-01376, 2022 WL 952743, at *6 (N.D. Ill. Mar. 30, 2022) (dismissing declaratory judgment claim seeking a declaration that RainBrella is "defective" because plaintiff "must demonstrate that Rainbrella is 'defective' to prevail on any of her independent claims"); *see also Frazier v. U.S. Bank Nat. Ass'n*, No. 11-C-8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013) ("Plaintiff seeks a declaration on the issues that the Court will decide in addressing Plaintiff's substantive claims. District courts in this District routinely exercise their discretion to decline to hear declaratory judgment action on this basis."); *Dixie Gas & Food, Inc. v. Shell Oil Co.*, No. 03 C 8210, 2005 WL 1273273, at *7 (N.D. Ill. May 25, 2005) (declining to hear declaratory judgment count that duplicated other counts of the complaint); *Allison v. City of Bridgeport, Ill.*, No. 05-CV-4206, 2006 WL 1599811, *3 (S.D. Ill. June 8, 2006) ("Count XI purportedly seeks a declaratory judgment and injunctive relief under the same theories already pled in Counts I through X. However, since such relief was requested in Counts I through X, Count XI adds nothing to Allison's complaint and need not be considered a separate cause of action.").

Because Counts IV and V would add nothing to Plaintiff's Complaint, this Court should exercise its discretion to decline to hear Plaintiff's declaratory judgment claims and dismiss Counts IV and V. [15]

---

[15] To the extent Count V intends instead to assert a breach of contract claim, it should be dismissed as duplicative of Count III.

28

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that this Court dismiss:

(a)  Plaintiff's Title IX claim in Count I against the Individual Defendants;

(b)  Plaintiff's due process claim in Count II in its entirety;

(c)  Plaintiff's breach of contract claim in Count III against the Individual Defendants; and

(d)  Plaintiff's stand-alone declaratory judgment claims in Counts IV and V in their entirety.


Dated: July 14, 2023

Respectfully submitted,

Defendants Board of Trustees of the University of
Illinois, Danielle Fleenor, Rony Die, Justin Brown,
January Boten, Debra Imel, and Mariah Young,


By: /s/ Peter G. Land
　　　　One of their Attorneys

Peter G. Land (Lead Counsel) #6229659
Gwendolyn B. Morales #6297233
Husch Blackwell LLP
120 S. Riverside Plaza, Suite 2200
Chicago, Illinois 60606
(312) 655-1500
Peter.Land@huschblackwell.com
Gwendolyn.Morales@huschblackwell.com