IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | Case No: 23-CV-02091 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE:      COLLEEN R. LAWLESS |
| | ) | MAGISTRATE:      ERIC I. LONG |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, et al. | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **IN OPPOSITION TO DEFENDANTS'** |
| Defendants. | ) | **MOTION TO DISMISS** |
| | ) | |

Now comes Plaintiff, John Doe, by and through undersigned counsel, and hereby submits the instant Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Eric F. Long*
ERIC F. LONG (ARDC #6299362)
TYLER J. WALCHANOWICZ (OH # 0100115)
Friedman Menashe Nemecek & Long, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
F: (216) 820-4659
E: efl@fanlegal.com
E: tjw@fanlegal.com

## MEMORANDUM OF LAW IN SUPPORT

### I.      INTRODUCTION

For months, Defendants discriminated against Plaintiff because he was male, in violation of Title IX of the Education Amendments of 1972. For months, Defendants stripped Plaintiff of basic due process rights. For months, Defendants repeatedly and willfully breached the contract created between the University of Illinois and Plaintiff. Following a sham investigation and disciplinary process, Plaintiff was erroneously found responsible for engaging in non-consensual sexual intercourse with Jane Roe, a female student. Plaintiff was then unjustly dismissed from the University of Illinois.

By filing his Complaint, Plaintiff seeks to do what Defendants chose not to do: ensure that his Constitutional due process rights are preserved; enforce promises and guarantees set forth by the University of Illinois; and bring an end to the Defendants' discriminatory conduct.

On July 14, 2023, Defendants filed a Motion to Dismiss, seeking to double down on their efforts to eradicate Plaintiff of his due process rights, contractual obligations, and Title IX responsibilities.  Defendants disingenuously portray Plaintiff as nothing more than a disgruntled student who is upset he lost the hearing. Defendants' Motion ignores that this lawsuit is not about the *result* of the flawed process—but rather the unjust and discriminatory process itself, which was designed to find males such as Plaintiff guilty of misconduct, regardless of the evidence.  Plaintiff respectfully submits that the Defendants' efforts are not supported by the facts or the law, and therefore, Defendants' Motion to Dismiss must be denied.

### II.     FACTUAL BACKGROUND

Plaintiff and Ms. Roe had been in a romantic relationship prior to the night in question, and had been engaging in consensual sexual activity even after their breakup, including just nine

days prior to the night in question. ECF No. 1 ¶¶ 17-19. On May 12, 2020, Ms. Roe agreed that Plaintiff could spend the night at her apartment. *Id.* at ¶ 21. Upon arriving at Ms. Roe's apartment, Plaintiff was met with a hug and kiss from Ms. Roe, before they both walked into Ms. Roe's bedroom. *Id.* at ¶ 27. While in the bedroom, Plaintiff and Ms. Roe engaged in consensual sexual intercourse, as Ms. Roe provided Plaintiff with words of encouragement throughout the sexual activity. *Id.* at ¶ 29. After sexual intercourse, Plaintiff and Ms. Roe spent the remainder of the day/evening together, including going back to Plaintiff's home to study before returning, together, to Ms. Roe's apartment. *Id.* at ¶ 32.

While at Ms. Roe's apartment, Ms. Roe invited Plaintiff to sleep in bed with her. *Id.* at ¶ 33. The next morning, Ms. Roe and Plaintiff took a photo together while in Ms. Roe's apartment, wherein Ms. Roe has her arms and legs wrapped around Plaintiff in an embrace. *Id.* at ¶ 35. At the time Plaintiff left Ms. Roe's apartment around noon on May 13, 2020, Ms. Roe gave zero indication that anything other than a purely consensual sexual encounter had occurred or that she was planning on falsely accusing him of rape. *Id.* at ¶ 29-36.

Later that day, Ms. Roe and Plaintiff spoke on the phone, at which point Ms. Roe, for the first time, expressed that she believed Plaintiff assaulted her. *Id.* at ¶ 37. Ms. Roe and Plaintiff agreed to meet to discuss these allegations at Ms. Roe's apartment. *Id.* While at her apartment, and in the midst of their discussion, Ms. Roe sexually assaulted Plaintiff, despite her knowledge that he was heavily medicated and lacked the capacity to consent. *Id.* After leaving Ms. Roe's and distressed at the allegations Ms. Roe lodged against him, Plaintiff notified Heather Wright, a University employee, of Ms. Roe's allegations, which caused Ms. Wright to notify the University's Office for Student Conflict Resolution. *Id.* at ¶ 39-41.

3

In June 2021, a formal complaint was filed against Plaintiff, prompting Defendants to investigate Ms. Roe's allegations. *Id.* at ¶ 43. Upon information and belief, Ms. Roe did not wish to have an investigation conducted or a formal process initiated. *Id.* at ¶ 44. Rather, she sought accommodations in the form of the University's help to ensure she did not have to see Plaintiff on campus. *Id.* The University denied this request, telling Ms. Roe that the only way it could guarantee that Ms. Roe did not see Plaintiff was by filing a complaint and participating in the disciplinary process, thereby implying to Ms. Roe that the University would inevitably find Plaintiff responsible and remove him from the University. *Id.*

In the course of the investigation, the Defendants learned that Ms. Roe sexually assaulted Plaintiff on May 13, 2020. *Id.* at ¶ 45. At the time, Defendants elected not to provide any of the same treatment and rights it provided to Ms. Roe, a female student. At the conclusion of its flawed investigation, which consisted of absolutely no effort to explore any of Ms. Roe's abundantly clear credibility concerns, a formal hearing was held. *Id*, generally. At the hearing, Defendants denied Plaintiff his Constitutional and contractual rights by, among other things, allowing biased panel members to participate on the committee and failing to adhere to the policies and procedures contained within University of Illinois' Student Code, Student Disciplinary Procedures, and Policy on Sexual Misconduct. *Id.*, generally.

After the hearing concluded, the panel found Plaintiff responsible for violations of University Policy surrounding sexual assault. *Id.* at ¶ 132. In its ruling, Defendants ignored each of Ms. Roe's inconsistencies and other credibility concerns, while ruling that Plaintiff's reporting of the allegations against himself was an indication of Ms. Roe's truthfulness. *Id.* at ¶ 135-136. Plaintiff appealed his finding of responsibility, but the appeal was a mere rubber-stamping of the panel's original finding. *Id.* at ¶ 143.

Throughout the investigation and hearing process, Defendants treated Plaintiff and Ms. Roe drastically differently, solely on the basis of their sex. *Id*., generally. This differential treatment was part in parcel of the University's common practice of discriminating against males who are accused of misconduct. *Id.*, generally. This common practice was on full display when the University, despite finding Ms. Roe responsible for sexual assault, allowed her to remain on campus while Plaintiff was separated from the University. *Id.* at ¶ 174.

### III.   <u>LAW AND ARGUMENT</u>

#### A.  *Legal Standard*

Defendants' Motion to Dismiss was brought pursuant to Federal Rule of Civil Procedure 12(b)(1), which asserts that the Court does not have jurisdiction over the subject matter of the complaint, as well as Federal Rule of Civil Procedure 12(b)(6), which attacks the sufficiency of the complaint. When examining a motion to dismiss pursuant to Rule 12(b)(1), Plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. *Lohrasbi v. Bd. of Trs. of Univ. of Ill.*, No. 12-3105, 2014 WL 12743795, at *2 (C.D. Ill. Feb. 6, 2014).

When analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court must determine whether the Complaint contains "sufficient factual matter to state a claim for relief that is 'plausible on its face.'" *Hoffman v. Dewitt Cty*., 176 F. Supp. 3d 795, 803 (C.D. Ill. 2016)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss pursuant to Rule 12(b)(6), the plausibility standard seeks more than a sheer possibility that a defendant acted unlawfully, but "is not akin to a probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the face of a motion to dismiss, the Court must accept all well pleaded allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft*, 556 U.S. at 678; *See also Hoffman*, 176 F. Supp. 3d at 803.

5

**B. *Plaintiff's Individual-Capacity Claims Against the Individual Defendants for Monetary Damages Are Not Barred by Sovereign Immunity and Should Not Be Dismissed Pursuant to Rule 12(b)(1).***

Defendants urge the Court to dismiss Plaintiff's claims for monetary damages against the Individual Defendants in their individual capacities, citing sovereign immunity. ECF No. 20-1 at p. 13. However, the two cases on which Defendants rely—*Haynes v. Ind. Univ.*, 902 F.3d 724, 731-32 (7th Cir. 2018) and *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003)—are readily distinguishable.

In *Haynes*, the court held that the doctrine sovereign immunity "barred a black assistant professor's § 1981 action, both in their individual and official capacities," because "the action had the identical effect as a suit against the state, as the administrators were not parties to professor's employment contract in their individual capacities, and there was no reason to believe that they, rather than the university, would foot the bill for a resulting judgment." *Haynes*, 902 F.3d 724, 732.  In *Omosegbon,* the court held that sovereign immunity barred a professor's claim for damages because the state would pay any judgment, since the professor sought "backpay and other forms of monetary compensation based on an employment contract." *Omosegbon*, 335 F.3d 668, 673.

The issue in both *Haynes* and *Omosegbon* turned on employment contracts, and whether the individual defendants were parties to the contracts. Here, no employment contract exists, as Plaintiff was not employed by the University of Illinois. Moreover, while Defendants' Motion to Dismiss seeks the dismissal of all claims against the individual defendants, the Motion is glaringly silent as to any argument that Plaintiff's § 1983 claim should be dismissed based on sovereign immunity, where no contract whatsoever is at issue.

Contrary to the distinguishable cases cited by Defendants, legal authority supports the denial of Defendants' motion relative to this issue. In *Isabell v. Trustees of Ind. Univ.*, 432 F.Supp.3d 786 (N.D. Ind.), the Court addressed this very issue: whether a plaintiff can proceed with a § 1983 claim against a state official in their individual capacity. In ruling that plaintiff could do so, the court held that "the difference between individual and official capacity claims under § 1983 turns not on the capacity in which the individual defendant acted when violating the federal right, but instead on who is the real party." *Isabell*, 432 F.Supp.3d 786, 793. "An official capacity suit alleges that an individual defendant implemented an official policy or custom of the state agency in a manner that the state agency remains the real party, whereas an individual capacity suit focuses on that individual's constitutional torts committed under color of state law." *Id.*

Plaintiff's Complaint does not seek monetary damages from the Individual Defendants based on a theory that they implemented an official policy or custom of the state. Rather, Plaintiff alleges that the Individual Defendants knowingly violated his rights to be free from sex-based discrimination and be assured due process. Thus, his claims against the Individual Defendants are not claims against the University, but against the individuals themselves. Simply put, the Eleventh Amendment "provides no shield for a state official confronted by a claim that [he or she has] deprived another of a federal right under color of state law," and "damage awards against individual defendants in federal court thus remain a permissible remedy." *Id.*, quoting *Scheuer v. Rhodes*, 416 U.S. 232, 237, 238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The *Isabell* court noted the very differences between a case such as Plaintiff's and those relied upon by Defendants, concluding that where no employment contact or action that arose from an employment contract existed, *Haynes and Omosegbon* did not provide useful guidance.

While Defendants allege that there is no reason to believe that the Individual Defendants, rather than University of Illinois, would foot the bill for a resulting judgment, the instant lawsuit seeks monetary damages from the individual defendants themselves, not the University. "That [University of Illinois] may choose to indemnify [the Individual Defendants] or that a judgment may exceed [their] capacity to pay (unless indemnified) is irrelevant." *Isabell*, 432 F.Supp.3d 786, 795. "To presume blindly that every suit against an individual state official cannot be paid by that individual and necessarily calls into question the public treasury would collapse this circuit's distinction under the Eleventh Amendment" *Id.* Like the defendant in *Isabell*, the University has not pointed to any employment contract (past or prospective), salary, benefits, or other measures of recovery that would necessarily implicate the State of Illinois. Instead, Plaintiff seeks monetary relief from the Individual Defendants for their actions done in their individual capacity.

*Isabell*, with its direct applicability to this matter, is hardly unique. Courts in this circuit and beyond have held that the Eleventh Amendment does not bar claims against state officials who are similarly situated to the Individual Defendants. *See Doe v. Purdue University*, 2019 WL 1369348 (March 25, 2019 N.D. Ind.) (declining to follow *Haynes* and allowing plaintiffs' individual capacity claims to proceed where plaintiffs alleged constitutional violations by the individuals, not violations of a contract to which the individuals were not parties); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that to establish individual liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right"); *Smith v. Wade*, 461 U.S. 30, 35-36 (1983)(holding that individual officers may be liable for punitive damages under § 1983); *Hafer v. Melo*, 502 U.S. 21, 30 (1991)("Eleventh Amendment

does not erect barrier against suits to impose "individual and personal liability" on state officials under §1983.")

Accordingly, the Eleventh Amendment sovereign immunity does not bar Plaintiff's claims against the Individual Defendants and Defendants' Motion to Dismiss should be denied.

### C.  Plaintiff Has Properly Alleged A Due Process Claim.

Defendants claim that Plaintiff has failed to properly identify a property or liberty interest, and also failed to show that he did not receive sufficient process. For the following reasons, such claims are without merit.

1.  Plaintiff has properly alleged a property interest.

In arguing that Plaintiff has not properly alleged a property interest in his education, Defendants rely on *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi*., 741 F.3d 769, 772 (7th Cir. 2013), which provides that a plaintiff must show that "he has a legally protected entitlement to his continued education." The *Charleson* Court determined that "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return" as opposed to simply alleging that a contract existed.  *Charleston*, 741 F.3d at 772; ECF No. 20-1 at pp. 18-19.

This Court considered—and rejected—similar arguments in *Doe v. Bd. Of Trs. of Univ. of Ill.*, 2017 WL 11593303 (Dec. 18, 2017 C.D. Ill.) ("*Univ. of Illinois*") The court stated,

> a student can prove that he has a property interest in a continued education if he can establish that he had a legally protected entitlement to his continued education at the university. This can be established by pleading, with specificity, the existence of an express or implied contract. *Id*. 'The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant [may] become part of the contract.

*Univ. of Illinois,* at *4.

In the aforementioned case, plaintiff alleged that his entitlement to a continued education was formed by documents sent to him upon his acceptance to the University. *Id.* Moreover, plaintiff's amended complaint cited numerous passages from these documents, including one from the University's Student Code and another taken from the University's Student Disciplinary Procedures. *Id.* The court found that these passages sufficiently described the specific promises made by the University. *Id.* "When taken together, and in concert with the other documents provided to plaintiff by the University, these passages could establish an express or implied contract guaranteeing plaintiff a legally protected entitlement to a continued education." *Id.* As such, the court concluded that plaintiff had pled sufficient facts to support his contention that he had a property interest in his continued education. *Id.*

In the instant matter, Defendants disingenuously suggest that the only mention of any contractual promises is a vague reference to an "express and implied contractual relationship between the University of Illinois and Plaintiff" at ¶ 325; ECF No. 20-1 at 19. Defendants ignore the fact that Plaintiff's Complaint contains more than sixty paragraphs and subparagraphs highlighting the promises made to Plaintiff. ECF No. 1 at ¶¶ 49-112, 345-346, 349. Plaintiff maintains that the alleged promises in the Complaint are even more thorough than that in *Univ. of Illinois.* Moreover, these referenced documents, which contain the promises highlighted in the Complaint, as well as additional promises, were attached as exhibits to Plaintiff's Complaint. *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013)("when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint.")

*Doe v. Purdue Univ.*, 2022 WL 124644 ("*Purdue III*") provides further guidance. In *Purdue III*, Purdue University suspended a student after what she alleged was a discriminatory and procedurally flawed Title IX process. She ultimately survived Purdue's motion for summary judgment on her due process count after the court concluded that—even setting aside the claim of lost tuition—a factual dispute continued to exist over whether the "other" economic losses and damages "Roe has suffered," associated with her efforts to move on with her educational life after her allegedly unjust suspension, "are not a protected interest." *Purdue III,* at 27.

Much like the student in *Doe v. Purdue Univ.,* 464 F.Supp.3d 989, 1001 (June 1, 2020 N.D. Ind.) ("*Purdue II"*), Doe has alleged a procedurally unfair Title IX disciplinary process which yielded an unjust removal from campus—causing (as in *Purdue III*) "economic damages, and other direct and consequential damages." ECF No. 1 ¶¶ 6, 341. The *Purdue III* court concluded that even summary judgment on a due process count would be inappropriate "without a developed argument" about the nature of the student's economic losses. *Purdue III* at 27.

Here, Plaintiff has sufficiently alleged an existing property interest, and therefore, Defendants' Motion to Dismiss must be denied.

2. <u>Plaintiff has properly alleged a liberty interest.</u>

One of the foundational opinions in this Circuit relating to due process and campus sexual assault is *Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019) ("*Purdue I*"). There, the court held that the accused student had satisfactorily pled a "stigma-plus" test, "which requires him to show that the state inflicted reputational damage accompanied by an alteration in legal status that deprived him of a right he previously held." *Purdue I,* at 661.

The first application of the Seventh Circuit's opinion in the context of a university's motion to dismiss an accused student's due process claim came in *Purdue II*. *Purdue II* defined

the stigma-plus test as "the need to show alteration of legal status along with some stigmatic or reputation injury." *Id.* at 1001. The court held that plaintiff had satisfied the test by alleging that his choice in occupation (i.e., attorney) triggered a legal obligation to disclose the disciplinary proceedings against him to graduate schools and licensing boards. *Id.* at 1002. Based upon this disclosure obligation, plaintiff alleged that it would be virtually impossible to enroll in law school or graduate school or be approved by licensing committees. *Id.* In viewing the allegations in the light most favorable to plaintiff, the court held that the stigma-plus test was satisfied.

In the instant matter, Plaintiff has pled that he has been dismissed from the University and the medical school program after being wrongly found responsible of sexual assault. ECF No. 1 at ¶ 142. Thus, he has pled that his legal status has changed. Moreover, Plaintiff has pled that, as a result, he has suffered a loss of future employment and a significantly lower probability of being admitted to another university. *Id.* at ¶ 341. As such, Plaintiff has properly alleged the alteration of legal status along with some stigmatic or reputation injury. *See Purdue II*, at 1001.

To rebut such arguments, Defendants rely heavily on an opinion granting a defendant University's motion for summary judgment, in *Doe v. Trs. Of Ind. Univ.*, 2021 WL 2213257, at *2 (S.D. Ind. May 4, 2021) ("*Indiana Univ.*"), which offers a different version of the "stigma-plus test." This version requires "(1) that the state disclosed false information that damaged his reputation, (2) that the reputational harm made it 'virtually impossible' for him to find employment in his chosen profession, and (3) that his legal status was altered." *Id.* The *Indiana Univ.* court made clear that it could not decide the question at the 12(b)(6) stage before ultimately granting summary judgment to the university. *Id.* at *2-3.

Setting aside Defendant's reliance on a ruling based on the summary judgment standard, as opposed to a 12(b)(6) motion, *Indiana Univ.* does not make *Purdue II* inapplicable law.

12

Instead, the case law provides varying versions of the stigma-plus test, which can be applied. Plaintiff urges this Court to adopt *Purdue II's* interpretation of the stigma-plus test, which he has clearly satisfied in this pleading stage. However, even if this Court adopts the *Indiana Univ.* test, Plaintiff's claims should still proceed, as he has properly alleged that the reputational harm he has suffered has made it virtually impossible for him to find employment in his chosen profession and that his legal status was altered. Regarding the disclosure element, the Complaint sets forth that the reason Plaintiff will be unable to be accepted into a different University is because the University will have to disclose, or has disclosed, that he sexually assaulted Ms. Roe (despite this being false). Moreover, the sufficiency of Plaintiff's argument that disclosure occurred or will occur is more suitable to determine at the summary judgment phase of this matter, which will allow all parties to present evidence beyond the four corners of the Complaint that has been obtained through the discovery process. *See also Doe v. Robinson* [Univ. of Illinois]*,* No. 2:20-cv-02265, Sept. 23, 2021 (order denying motion to dismiss due process count in complaint that alleged both liberty and property interest, citing the need for a "more fully developed" record to evaluate "Defendants' arguments").

As such, Plaintiff has sufficiently pled facts to establish a liberty interest of which he has been deprived by the Defendants' conduct.

### 3.   Plaintiff has alleged that he did not receive sufficient process.

Defendants assert that Plaintiff has not alleged he did not receive sufficient process because Defendants subjectively believe: (1) that Plaintiff received adequate notice and multiple opportunities to be heard and (2) that the procedures applied were fundamentally fair and there was no bias. ECF No. 20-1 at pp. 21-26. For starters, the argument that Plaintiff received a sufficient process is "better suited for summary judgment." *Doe v. Bd. Of Trs. of the Univ. of Ill.*,

2:17-cv-02180-CSB-EIL, ECF 34 at *13 (C.D. Ill. Oct. 10, 2017)(Bruce, J.). Moreover, Plaintiff has more than sufficenitly pled that the process afforded to him by Defendants was unfair, biased, and woefully deficient.

To satisfy the Due Process Clause, "a hearing must be a real one, not a sham or pretense." *Purdue I*, at 663 (7th Cir. 2019)(quoting *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 629 (7th Cir. 2016). In the present case, Plaintiff asserts that the process afforded to him was a sham, as members of the panel came to the hearing having already predetermined that Mr. Doe was guilty. *Dietchweiler*, 827 F.3d at 630, ECF No. 1 ¶¶ 44, 120, 336. Aside from the predetermined conclusion of guilt, Mr. Doe was also given a biased panel and treated significantly differently than Ms. Roe. ECF No. 1 ¶¶ 120, 128, 167-169.

To support their misguided position, Defendants rely on *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 675 (7th Cir. 2016), which provided that there is a presumption that administrators are fair. However, this presumption can be overcome. Notably, *Hess* involved a motion for summary judgment, further indicating that Defendants' argument is not appropriate at the current juncture. In fact, Defendants fail to cite any controlling case law that suggests that the question of whether the presumption of fairness has been overcome is appropriate in a motion to dismiss. Certainly, there may be information that is gathered during the discovery stage that allows the Court to more appropriately determine whether the relevant parties are entitled to the presumption of fairness and honesty, or whether the presumption can be successfully rebutted.

Nonetheless, Plaintiff's Complaint sets forth ample facts, when taken as true, to sufficiently plead that the process he was afforded was a sham or pretense, and to successfully rebut the presumption of fairness. These facts include, by way of example:

- Investigators had preconceived notions as to Plaintiff's responsibility, ignored relevant witnesses, and failed to explore any of Ms. Roe's inconsistencies or credibility issues. ECF No. 1 at ¶ 117;

- The University allowed biased individuals to serve as panel members, who were authorized to determine Plaintiff's responsibility, and—as could have been expected—these biased members manifested their bias during the hearing. *Id.* at ¶ 128, ¶131(b).

- The panel members allowed character evidence of Ms. Roe to be introduced but prohibited Plaintiff from doing the same. *Id.* at ¶131(b);

- Rather than relying on the objective evidence, the panel substituted their subjective beliefs and unfair biases about Mr. Doe and his behavior in order to confirm their predetermined findings. *Id.* at ¶¶ 131(d),(f).

Plaintiff has clearly alleged that the panel continued to ignore evidence undermining Ms. Roe's credibility and repeatedly allowed Ms. Roe and her witnesses to inappropriately bolster her credibility while lodging personal attacks against Plaintiff.

Additionally, Mr. Doe pled that he "was entitled to fundamentally fair procedures" to address the Title IX allegation against him, since the University of Illinois, as "a public university, has an absolute duty to provide its students equal protection." ECF No. 1 at ¶ 329, 333. Plaintiff's § 1983 claim survives on those grounds as well. As the *Purdue II* court observed, since the plaintiff presented some evidence that "the unfairness of the process inherently violated her rights on the basis of her sex as protected by the Equal Protection Clause," summary judgment on the student's § 1983 claims against the individual defendants was inappropriate "given the factual disputes as to the investigatory process, and their implication of Title IX." *Purdue II,* at 27-28. The court in *Doe v. University of Mississippi* confronted similar facts, where the plaintiff alleged that gender bias so permeated the university's handling of his case, that it deprived him of his rights to due process. *Doe v. Univ. of Miss.*, 2018 WL 3570229, (S.D. Miss. July 24, 2018) In denying the university's motion to

dismiss, the court pointed to allegations of a "biased and flawed" investigative report that the hearing panel could not rebut because of gender-biased training, leaving the student with a plausible § 1983 claim: "This is a he-said/she-said case, yet there seems to have been an assumption under [the Title IX coordinator's] training materials that an assault occurred." *Id.*, at *27-28. See also *Purdue III*, at 37-39 (denying motion to dismiss after analyzing *Purdue I*'s § 1983 claims through the lens of the Equal Protection Clause).

Aside from the general bias against him simply for being accused, Plaintiff was subjected to gender bias throughout the process as well. For example, Defendants allowed Student 1 to serve as a voting panel member, despite his social media posts that expressed that he believes all accusers. ECF No. 1 ¶ 128. While being interviewed and discussing Ms. Roe's sexual assault against him, Defendants blamed Plaintiff, asking him why he didn't leave the room to escape Ms. Roe's assault. *Id.* at ¶ 157. No such question was ever asked of Ms. Roe. *Id.* at ¶ 158. As a victim, the University refused to allow Mr. Doe the opportunity to tell his story in front of a panel, unlike Ms. Roe, who was given unfettered permission to tell her story as a "victim" as well as provided an extensive victim-impact statement, which urged the University to remove him from campus. *Id.* at ¶¶ 168-172. Finally, despite being found responsible of the same violation as Ms. Roe, Plaintiff was dismissed from the University while Ms. Roe was given a minimal sanction. *Id.* at ¶ 224.

Finally, Defendants argue that Plaintiff's disagreement with the Panel's decision does not mean that he did not receive sufficient process. However, Plaintiff's Complaint does not allege a mere disagreement regarding the outcome. Rather, Plaintiff's Complaint alleges the unlawful conduct of Defendants constituted a sham disciplinary procedures, which of course generated an

erroneous outcome. When taking the allegations as true, as this Court must deny Defendants' Motion to Dismiss.

### D.  The Individual Defendants Are Not Entitled to Qualified Immunity

Defendants argue that, even if Plaintiff has pled sufficient facts to support a claim that his constitutional rights were violated, these rights were not clearly defined, and as such, Defendants are entitled to qualified immunity. ECF No. 20-1 at p. 16.

The arguments set forth in Defendants Motion are based on an undeveloped record. For this reason, this Circuit has routinely denied Rule 12(b)(6) motions regarding qualified immunity. *See Alvarado v. Litscher,* 267 F.3d 648, 651-52 (7th Cir. 2001) ("A complaint is generally not dismissed under rule 12(b)(6) on qualified immunity grounds."); *Roger C. v. Valley View Pub. Sch. Dist.*, 2008 WL 4866353 (June 23, 2008 N.D. Ill.) (Denying qualified immunity and 12(b)(6) motion for school officials holding that "Defendants' qualified immunity arguments are based on an undeveloped record, the Court denies Defendants' motions as to this issue."); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("Affirmative defenses do not justify dismissal under Rule 12(b)(6)."); *Fairley v. Fermaint*, 482 F.3d 897, 901-902 (7th Cir. 2007) ("Indeed, a plaintiff need not plead factual allegations that anticipate and overcome the defense of qualified immunity."); *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1197 (7th Cir. 2013) ("The plaintiff is not required to pled factual allegations that anticipate and overcome a defense of qualified immunity so because an immunity defense usually depends on the acts of the case, dismissal at the pleading stage is inappropriate.")

At this stage, Defendants have done nothing more than make a conclusory statement that Plaintiff cannot survive qualified immunity. This belief is based on a quote from *Purdue I,* wherein the court noted that no student has ever successfully shown a property interest in their

education. ECF No. 20-1 at p. 16. Defendants conclude that this necessarily dictate that Plaintiff's constitutional rights were not clearly defined. However, the case law in this field has suggested that under certain circumstances, a property interest may exist. *See Doe v. Bd. Of Trs. of Univ. of Ill.*, 2017 WL 11593303 (Dec. 18, 2017 C.D. Ill.). Indeed, taken to its logical extreme, Defendants' argument would seem to suggest that district courts *must* grant qualified immunity to individual defendants in due process lawsuits filed by accused students, a viewpoint rejected by *Purdue III,* at 28-30.

Moreover, it has been recognized that to satisfy the Due Process claim, "a hearing must be a real one, not a sham or pretense." *Purdue I,* at 663 (quoting *Dietchweiler*, 827 F.3d 622, 629 (7th Cir. 2016). This right was well defined at the time of Plaintiff's hearing. Despite this right, Defendants, subjected him to a sham hearing wherein the members of the panel showed bias towards him as an individual, bias towards males, and predetermined his guilt before hearing any testimony.

Plaintiff also has a clearly defined right to be free from sex-based discrimination. 20 U.S.C. § 1681 provides, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Despite this clearly defined federal right, Defendants discriminated against him by treating him drastically different than they treated Ms. Roe, based solely on his gender. This differential treatment included refusing Plaintiff the same process as a complainant that it provided Ms. Roe, treating Plaintiff differently than Ms. Roe while Plaintiff was respondent, and implementing a policy that was designed to dismiss male students from the University. ECF No. 1 ¶¶ 118, 168-173, generally. Plaintiff cannot have due process of law, where he is subjected to a sham process because he is a male.

This right is clearly defined. *Purdue I,* at 663 (quoting *Dietchweiler*, 827 F.3d 622, 629 (7th Cir. 2016); *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279, 284 (2002)(noting that Title IX of the Education Amendments of 1972 create individual rights and that § 1983 actions may be brought to enforce rights created by federal statutes as well as the Constitution.)  As such, in the matter *sub judice*, the rights of Plaintiff have been defined by the Complaint, and Defendants' Motion to Dismiss must be denied.

### E.  Plaintiff has Pled Sufficient Claims Against Danielle Fleenor

Defendants allege that all claims against Danielle Fleenor must be dismissed because the Complaint lacks even a single allegation that Fleenor engaged in misconduct. ECF No. 20-1 at p. 17. At the pleading stage, the Court must accept all well pleaded allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft*, 556 U.S. at 678 (Emphasis added); *See also Hoffman*, 176 F. Supp. 3d at 803.

Plaintiff's Complaint is clear and unambiguous in alleging that Danielle Fleenor, at all relevant times, was serving as University of Illinois' Title IX Coordinator. ECF No. 1 at ¶ 8. Plaintiff's Complaint is centered around the unfair, biased, and deficient process he was subjected to, a process that Ms. Fleenor, as Title IX Coordinator, was responsible for. ECF No. 1 at generally, ¶¶ 73, 75, 105. Moreover, according to University of Illinois' Student Code, which is attached to the Complaint, and thus incorporated therein:

> [T]he lead Title IX Coordinator is responsible for and authorized to coordinate the University's efforts to comply with and carry out its responsibilities under Title IX, which prohibits sex discrimination in education programs and activities for institutions that receive federal financial assistance… The lead Title IX Coordinator also oversees the University's response to all reports and complaints of Prohibited Sexual Misconduct.

ECF No. 1-1 at p. 21, 1-3 at p. 23; *Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013)("when a plaintiff attaches to the complaint a document that qualifies as a written

instrument, and her complaint references and relies upon that document in asserting her claim, the contents of that document become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint.")

The reasonable inferences that can be gathered from Plaintiff's Complaint is that Danielle Fleenor had a fundamental and essential role in overseeing and implementing policies that stripped Plaintiff of his constitutional rights, breached the contract between him and the University, and subjected him to sex-based discrimination. As such, Plaintiff has sufficiently pled facts to survive Defendants attack regarding Ms. Fleenor.

### F.  Plaintiff's Declaratory Judgment Claims Are Properly Pled.

Defendants argue that this Court should dismiss Counts IV and V of Plaintiff's Complaint because they are duplicative of Plaintiff's remaining claims. ECF No. 20-1 at pp. 26-28. The Declaratory Judgment Act, 28 U.S.C. § 2201 provides that a court may declare the rights and other legal relations of any interested party. *See Haze v. Kubicek,* 880 F.3d 946, 951 (7th Cir. 2018). While the Act does not create an independent cause of action, it does provide an additional form of relief.

Defendants allege that Counts IV and V seek declaration on the same substantive issues raised in Counts I-III, however, the reality is that Counts IV and V seek additional relief from Counts I-III, which is precisely what the Act permits. As such, Plaintiff submits that this Honorable Court should exercise its discretion to hear Plaintiff's declaratory judgment claims.

### IV.   <u>CONCLUSION</u>

Plaintiff is not required to prove his case through his Complaint. Instead, it is only required that the Complaint give Defendants fair notice of what the claims are and the grounds upon which they rest. *Divane v. Nw. Univ.*, 953 F.3d 980,987 (7th Cir. 2020). It is clear from the

facts and allegations set forth in Plaintiff's Complaint, that he has done so. *See also Doe v. Princeton Univ.*, 30 F.4th 335, 339-340 (3d Cir. 2022) ("There are two sides to every story. But a complaint need not tell both. John Doe's Complaint plausibly tells his side [regarding Princeton's actions] while investigating Title IX claims filed against him. Discovery might not bear out Doe's account, but he has satisfied his burden at this early stage").

For the foregoing reasons, Plaintiff respectfully submits that he has pled sufficient facts to survive Defendants' Motion to Dismiss. As such, Defendants' Motion should be denied. Alternatively, should this Court grant Defendants' Motion as to any portion of the Complaint, Plaintiff hereby moves this Court for leave to file an amended complaint.

Respectfully submitted,

*/s/ Eric F. Long*
ERIC F. LONG (ARDC #6299362)
TYLER J. WALCHANOWICZ (OH # 0100115)
Friedman Menashe Nemecek & Long, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH 44114
P: (216) 928-7700
F: (216) 820-4659
E: efl@fanlegal.com
E: tjw@fanlegal.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was filed on this 18th day of August, 2023, by CM/ECF, which will send a notification of electronic filing (NEF) to the parties of record.

/s/ Eric F. Long

ERIC F. LONG (ARDC #6299362)