E-FILED
Wednesday, 25 September, 2024  11:14:29 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| JOHN DOE,<br>    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-2091 |
| | ) | |
| BOARD OF TRUSTEES OF THE<br>UNIVERSITY OF ILLINOIS, et al.,<br>    Defendants. | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants'[1] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. (Doc. 19). For the reasons that follow, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## I.    PROCEDURAL BACKGROUND

On April 18, 2023, Plaintiff John Doe[2] filed a complaint following a decision by the University of Illinois to dismiss Plaintiff after he was accused of sexual misconduct. (Doc. 1). Specifically, Plaintiff alleges that Defendants violated his rights under Title IX and the Due Process Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. §§ 1983, 1985,

---

[1] The Defendants in this case include: the Board of Trustees of the University of Illinois; Danielle Fleenor, individually, and in her capacity as Title IX Coordinator; Rony Die, individually, and in his capacity as Assistant Dean of Students; Justin Brown, individually, and in his capacity as Director of the Office for Student Conflict Resolution; January Boten, individually, and in her capacity as Assistant Dean of Students and Investigator; Debra Imel, individually, and in her capacity as Assistant Dean of Students and Investigator; Mariah Young, individually, and in her capacity as Assistant Dean of Students and Investigator; and John Does 1-5, individually, and in their official capacities.

[2] Plaintiff was granted permission to proceed in this action under the pseudonym "John Doe." *See* Text Order 6/29/2023. The University Title IX complainant shall be referred to as "Jane Roe."

and 1988. (*Id.* at 59-89). Plaintiff also alleges a breach of contract claim and requests declaratory judgment. (*Id.* at 89-95).

On July 14, 2023, Defendants filed their Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim, challenging all but the Title IX and breach of contract claims against the Board. (Doc. 19). On August 24, 2023, Plaintiff filed his brief in opposition to Defendants' Motion to Dismiss (Doc. 26) and Defendants filed their Reply on September 22, 2023. (Doc. 29).

## II.   FACTUAL BACKGROUND

In May of 2020, John Doe was a student on medical leave at the University of Illinois, College of Medicine. (Doc. 1 at 4). He had previously been in a romantic relationship with Jane Roe, who was a second-year medical student at the school. (*Id.* at 6). After their relationship ended, Plaintiff and Roe continued to communicate, spend time together, and engage in consensual sexual activity. (*Id.*). Between May 6 and May 12, 2020, Plaintiff was hospitalized due to a mental health crisis. (*Id.*). Roe was among the individuals present when Plaintiff was discharged from the hospital. (*Id.*). Plaintiff, his parents, and Roe spent the afternoon together on May 12, 2020 before Roe returned to her apartment. (*Id.* at 6-7). Upon returning to his own home, Plaintiff took his prescribed Adderall and began studying. (*Id.*). A few minutes later, Roe texted Plaintiff and asked him to come over and keep her company. (*Id.*). After Plaintiff arrived, Roe got up from her seat and hugged and kissed Plaintiff, and they walked into her bedroom. (*Id.*).

In the bedroom, Plaintiff alleges he suffered from an episode of psychosis as a side effect of the combination of Adderall and Lexapro. (*Id.* at 8). As a result, Plaintiff contends

that his memory of the events in the bedroom is diminished. (*Id.*). The formal complaint[3]

that Roe filed with the Office for Student Conduct Resolution against Plaintiff included

assertions that:

- Plaintiff picked Roe up and took her into her bedroom, threw her on the bed, tried to kiss her while she turned her head away and said "no," took off her shorts, and while one of her arms was under her and Plaintiff was holding her other arm, he put his penis into her vagina while she was crying and saying "stop" and "no" for approximately 5-10 minutes;
- Plaintiff got off her and asked her to give him oral sex, she said "no";
- Plaintiff eventually pushed Roe down on the bed and did it again; and after getting off of her, Plaintiff put his hands on his head and said "oh my god [Roe], I just raped you."

(Doc. 20-1 at 4; Complaint Interview, Ex. 1). After the alleged sexual intercourse, Roe

noticed Plaintiff's pupils appeared to be abnormal and asked him if he had hit his head.

(Doc. 1 at 8). They continued to spend that night together, and eventually fell asleep with

each other. (*Id.*). The two spent the next morning together and took a picture depicting

Roe hugging Plaintiff with her arms and legs wrapped around him. (*Id.* at 9). Eventually,

Roe told Plaintiff she would like to be alone, so he left. (*Id.*).

Later that day, Roe spoke with Plaintiff on the phone and stated that she believed

he had sexually assaulted her. (*Id.*). Plaintiff asked if he could come over and discuss the

allegation with Roe, and she agreed. (*Id.*). Soon thereafter, while Plaintiff and Roe laid in

her bed, Roe grabbed Plaintiff's hand and placed it on her breast. (*Id.*). When Plaintiff told

---

[3] "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501,505 (7th Cir. 2013). Courts may consider those documents in ruling on a motion to dismiss without converting it to a motion for summary judgment. *Id.* Because the formal complaint that Doe filed against Roe is referred to in his Complaint and is central to his claims, the Court considers that exhibit in ruling on the motion to dismiss.

her he did not want to engage in sexual activity, Roe moved his hand to other parts of her body, including her genitals. (*Id.*). She asked Plaintiff to remove her clothing and perform oral sex on her. (*Id.*). Plaintiff felt he had no choice but to comply. (*Id.*). Following the sexual encounter, Plaintiff complained of dizziness and light-headedness. (*Id.*). Roe took Plaintiff's car key and went outside to call her boyfriend. (*Id.*). After a few minutes, Plaintiff found Roe outside, requested his key, and left. (*Id.*).

Upon arriving home, Plaintiff told his parents that Roe had accused him of sexual assault. (*Id.* at 10). Plaintiff experienced another mental health crisis, and his parents called Heather Wright, a staff member of the University, who reported the allegation to the University's Title IX Office. (*Id.*). The University, through its Office for Student Conflict Resolution, began an investigation into the claims. (*Id.*). A formal Complaint was filed against Plaintiff in June 2021. (*Id.*). During the investigation into Plaintiff in October 2021, the University learned that Roe had engaged in non-consensual sexual activity with Plaintiff on May 13, 2020, but took no action against Roe at that time. (*Id.* at 11). In January 2022, a formal complaint was filed against Roe for the non-consensual sexual activity which allegedly occurred on the May 13, 2020. (*Id.*).

Pursuant to the OSCR policy, students accused of sexual misconduct at the University have a right to notice of the proceedings, participation in the administrative hearings, an investigative process, an ability to review and respond to the evidence, and the opportunity to bring an advisor with them to each phase of the proceedings. The policy ensures a measure of objectivity and notes: "All disciplinary decisions will be based on an objective evaluation of evidence." (Doc. 1, Ex. D, Student Disciplinary

Procedures, at 7). In the first step of this process, the investigator collects evidence and interviews relevant witnesses. (*Id.* at 7-9). If the investigator finds that no reasonable decision-making panel could find a violation of the Student Code, then the investigator can close the case. (*Id.* at 9). But if the investigator does not close the case, then the case gets sent to a panel composed of at least one student and one faculty member. (*Id.* at 11).

The accused student and the complainant are given an opportunity to challenge the objectivity of any panelist. (*Id.*). Once a panel is selected, a hearing is conducted wherein the parties are able to submit evidence and call witnesses to appear. (*Id.* at 11-14). Although the investigator may participate in questioning and deliberation, they cannot vote with the panel. (*Id.* at 12). If formal sanctions are imposed against the student, the Panel provides the student with a rationale for the decision and any imposed sanctions. (*Id.* at 14). Both the accused and the complainant may appeal the decision of the panel based on procedural irregularity, new evidence, arguments that the investigator or panel members had a conflict of interest or bias that affected the outcome of the matter, and the sanctions imposed were not appropriate for the violations. (*Id.* at 17). If a student is dismissed from the University, that student may also petition for permission to re-enter the University. (*Id.* at 15-16).

Plaintiff alleges that he and Roe were treated differently during the investigation of their respective complaints. (*Id.* at 34). For instance, Roe was promptly offered supportive measures, such as counseling services, while Plaintiff was not sent information on supportive measures until weeks later. (*Id.* at 36). Plaintiff claims the investigators ignored relevant witnesses and "badgered Plaintiff during his interview,

criticized his narrative multiple times, and insinuated that his version of events was not believable." (*Id.*). He also alleges that Defendant Imel's report made it "clear that [she] doubted Plaintiff's story." (*Id.*). In contrast, Imel's report from Roe's interview did not indicate that she questioned Roe about "any discrepancies or her peculiar behavior after the alleged assault." (*Id.*). Additionally, Plaintiff criticizes the fact that investigators questioned why Plaintiff's allegations against Roe were relevant. (*Id.*).

On or about October 29, 2021, November 4, 2021, and November 5, 2021, a Panel of the Subcommittee on Sexual Misconduct conducted a formal hearing to address Roe's allegation against Plaintiff. (*Id.* at 37). Plaintiff alleges that several members of the panel were biased against men. (*Id.*). For instance, Defendant Rony Die, advisor to the committee, had a proclivity of being biased against males. (*Id.* at 38). Student 1, a student voting member, raised money on his social media account for RAINN, a national anti-sexual violence organization. (*Id.*). Panel member Kristin Wilcox's personal Twitter account criticized "masculinity" and "mansplaining." (*Id.*).

At the conclusion of the hearings, Plaintiff was found to be responsible for violations of Section 1-302.b1 of the Student Code—Sexual Assault. (*Id.* at 41). The panel found Roe was credible while Plaintiff was not. (*Id.*). The panel acknowledged that at the time of the incident, Plaintiff had recently been hospitalized, but found that conversations he had around that time extended credibility to Roe's report of sexual assault. (*Id.*). As a result of the finding, Plaintiff was dismissed from the University. (*Id.* at 43). Plaintiff filed an appeal which was denied on January 6, 2022 (*Id.*).

On June 23, 2022, Roe was found to be in violation of the policy prohibiting sexual assault for putting Plaintiff's hand on her breast. (*Id.*). All the other sexual activity was found to be consensual. (*Id.*). The finding was made without a hearing panel. (*Id.*). Roe was placed on University probation and ordered to write a research paper, while remaining as a student at the University's medical school. (*Id.*).

## III.   DISCUSSION

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true, and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458.

To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.  Analysis

Defendants raise several challenges to Plaintiff's Complaint.[4] First, Defendants assert that all claims against Defendant Fleenor must be dismissed based on the absence of any allegations against her. Next, Defendants argue that Plaintiff's due process claim should be dismissed because Plaintiff did not properly allege a procedural due process violation and, in any event, Defendants are entitled to qualified immunity. Finally, Defendants argue that Plaintiff's declaratory judgment claims should be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, is discretionary and the claims are duplicative of Plaintiff's substantive claims.

### 1.  Defendant Fleenor

Defendants allege that all claims against Defendant Fleenor must be dismissed because the Complaint lacks even a single allegation that Fleenor engaged in misconduct. Section 1983 does not allow actions against individuals merely for their supervisory role of others. *Doe v. Purdue University*, 928 F.3d 652, 654 (7th Cir. 2019). To be held liable under Section 1983, an individual must have caused or participated in the alleged constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). Thus, a supervisor must have known about the unconstitutional conduct and either facilitated, approved, or condoned it, or turned a blind eye to it. *Doe*, 928 F.3d at 654. A plaintiff must allege specific

---

[4] At oral argument, the following claims were dismissed: 1) Title IX claims in Count 1 against individual defendants; 2) substantive due process claims in Count 2 against the Board of Trustees; 3) breach of contract claims against individual defendants in Count 3; 4) injunctive relief claims against individual defendants in their individual capacity; and 5) monetary damages claims against individual defendants in their official capacities. (Minute Entry 10/20/2023). Therefore, Defendants arguments as to those claims will not be discussed.

acts or conduct on the part of the defendant. *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). It is insufficient to merely include the defendant's name in the caption of the complaint. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998); *Potter*, 497 F.2d at 1207 (7th Cir. 1974).

Plaintiff argues that Fleenor, as the Title IX coordinator, had a fundamental role in "overseeing and implementing policies that stripped Plaintiff of his constitutional rights, breached the contract between him and the University, and subjected him to sex-based discrimination." Because the Title IX and breach of contract claims against the individual defendants were dismissed, the only relevant question is whether Plaintiff adequately alleged that Fleenor oversaw and implemented the policies relating to the disciplinary proceedings. Plaintiff did not do so. Fleenor does not appear by name anywhere in the Complaint. There are no allegations in the Complaint that Fleenor knew about the alleged constitutional violations, much less her facilitation or approval of those violations. Without specific allegations as to her conduct, Defendant Fleenor should be dismissed as a party. *Potter*, 497 F.2d at 1207. Therefore, the Defendant's Motion to Dismiss is granted as it relates to Defendant Fleenor.

### 2. Due Process Claim

In Count II, Plaintiff alleges a claim under 42 U.S.C. §§ 1983, 1985, and 1988 against the individual defendants for violation of Plaintiff's protected interests without procedural due process. The Fourteenth Amendment prevents a state from depriving a person of "property" or "liberty" without due process of law. U.S. Const. amend. XIV, § 1. In order to proceed under a procedural due process claim, the plaintiff must first

identify the protected property or liberty interest at stake. *Malhotra v. University of Illinois at Urbana-Champaign*, 77 F.4th 532, 536 (7th Cir. 2023). Next, if the plaintiff was deprived of one of those interests, the court must determine what process was due under the circumstances. *Id.* (citing *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013)).

Defendants argue that: (1) Plaintiff has not properly alleged a property interest; (2) Plaintiff has not properly alleged a liberty interest; and (3) even if Plaintiff was deprived of an interest, he received fair process. Alternatively, Defendants argue that they are entitled to qualified immunity.

### a. Property Interest

The Seventh Circuit has explicitly held that attending a university does not automatically create a constitutional property right because, unlike with grade school education, the law does not entitle each person the right to receive an education at a public university. *Malhotra v. University of Illinois At Urbana-Champaign*, 77 F.4th 532, 537 (7th Cir. 2023). A plaintiff must not only allege the existence of an express or implied contract, he must also establish that the contract "entitled him to the specific right that the university allegedly took, 'such as ... the right not to be suspended without good cause.'" *Id.* (quoting *Doe*, 928 F.3d at 660). To be clear, "the student's complaint must be specific about the source of this [express or] implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* (quoting *Charleston v. Bd. Of Trs. Of Univ. of Ill. At Chi.*, 741 F.3d 769, 773 (7th Cir. 2013)). Contracts between universities and students can come from a variety of sources including

student catalogs, policies, bulletins, and other publications. *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022).

For example, in *Malhotra*, the Seventh Circuit held that the plaintiff failed to sufficiently allege that the University officials violated a specific contractual right between the parties. *Malhotra*, 77 F.4th at 537. In that case, the plaintiff alleged that the University violated his Due Process rights by failing to follow the procedures outlined in its student code before suspending the plaintiff. *Id.* at 535. The plaintiff did not provide a source of any express contract or identify any specific promises made by the University. *Id.* at 537. Instead, he "assume[d] on appeal that his act of paying tuition created a return promise from the University to either suspend him only for good cause or to follow its own procedures when deciding whether to suspend him." *Id.* The Seventh Circuit held that this assumption was insufficient to establish a property interest. *Id.* Due to the plaintiff's failure to plausibly suggest the existence of an express or implied contract, the threshold requirement of alleging that the individual defendants deprived him of a constitutionally protected interest was not satisfied. *Id.* Therefore, the Seventh Circuit did not review whether the defendants followed the University's internal process in deciding whether to suspend him. *Id.*

Unlike the plaintiff in *Malhotra*, Plaintiff here has pled more than just the assumption that his tuition created a promise from the University: he has pointed to specific documents and promises made by the University. Plaintiff argues that the Student Handbook contained several policies and procedures that the University was bound to follow during the investigation. Plaintiff has alleged that his entitlement to a

continued education was formed by documents sent to him upon his acceptance to the University. Plaintiff refers to numerous passages from the student handbook which he has included as an exhibit. Plaintiff further supported his claims with specific passages from the Student Disciplinary Procedures, which establishes guidelines and procedures for investigations into the allegations against Plaintiff.

When taken together, and in concert with the other documents provided to Plaintiff by the University, these passages could establish an express or implied contract guaranteeing Plaintiff a legally protected entitlement to a continued education. Such an entitlement, if Plaintiff's reading of the documents is to be accepted, could not be removed without due process. Therefore, at this early stage in the proceedings and based upon the precedent outlined above, the court concludes that Plaintiff has alleged sufficient facts to support his contention that he had a property interest in his continued education. *See Charleston*, 741 F.3d at 773.

### b. Liberty Interest

To succeed on a theory that the University deprived him of a constitutionally protected liberty interest, Plaintiff must satisfy the "stigma plus" test, which requires him to allege both that he suffered a reputational harm and an alteration in legal status that deprived him of a right he previously held. *Malhotra*, 77 F.4th at 538. "A state actor infringes on a liberty interest only by 'cast[ing] doubt on an individual's ... reputation' to such a degree that 'it becomes virtually impossible for the [individual] to find new employment in his chosen field.'" *Id.* (*quoting Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (alterations in original).

In *Malhotra*, the plaintiff claimed his suspension made it virtually impossible for him to pursue a career as a healthcare consultant because his suspension would be disclosed to graduate schools and prospective employers. *Malhotra*, 77 F.4th at 538. The Seventh Circuit stated that after his suspension, he could return to school, graduate, and apply to graduate schools in the field of his choice. *Id.* "While we acknowledge that future schools and employers, might not look favorably on a suspension for violating the University's rules, it is far from clear that they would reflexively turn Malhotra away for this reason." *Id.* The court thus found the allegations did not suggest it would be impossible for Malhotra to become a healthcare consultant. *Id.*

In contrast, in *Doe*, the Seventh Circuit held the plaintiff adequately alleged that Purdue University deprived him of a protected liberty interest in his freedom to pursue his occupation of choice. *Doe*, 928 F.3d at 66. The plaintiff was suspended for an academic year after the University found him guilty of sexual violence under Title IX, and based on the finding of guilt, "John was expelled from the Navy ROTC program, which terminated his ROTC scholarship and plan to pursue a career in the Navy." *Id.* The Seventh Circuit held the university's decision to brand the plaintiff as a sex offender inflicted reputational harm which resulted in his expulsion from the Naval ROTC program and foreclosed his re-enrollment in the program. *Id.* at 661. Because of that, the plaintiff's chances of pursuing naval service were thwarted. *Id.* at 662–63. The Court concluded that the University's decision to suspend Plaintiff for sexual misconduct stigmatized him and changed his legal status from "full-time student in good standing to one suspended for an academic year." *Id.* at 663.

The instant case is more akin to *Malhotra* than *Doe*. Plaintiff was dismissed from the University, but he maintains the ability to enroll in other medical schools. Plaintiff is not able to demonstrate that he is foreclosed from an entire field of study based on his dismissal from the University. Therefore, Plaintiff has not satisfied the "stigma-plus" test and has not demonstrated that the University deprived him of a protected occupational liberty interest.

### c. Fair Process

Based on Plaintiff establishing a plausible property interest, the Court must next assess whether Defendant used fundamentally unfair procedures. When a right is protected by the Due Process Clause, a state actor "may not withdraw [it] on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred." *Doe*, 928 F.3d at 663, *citing Goss v. Lopez*, 419 U.S. 565, 574 (1975) (alterations in original). The court must consider the nature of the interest and the severity of its impairment when determining whether a process is fundamentally unfair. *Id.* "In the disciplinary context, the required process depends on a number of factors, including the severity of the consequence and the level of education." *Id.* at 663.

For example, in *Doe*, the Seventh Circuit found that the plaintiff adequately alleged the process was deficient when he was given notice of the allegations against him, but the university did not disclose its evidence to him. *Doe*, 928 F.3d at 663. The Seventh Circuit emphasized that the hearing must be "a real one, not a sham or pretense." Of particular concern to the Court was the fact the committee found the complainant more credible than the plaintiff in a case that "boiled down to a he said/she said" without ever

receiving a statement written by the complainant herself, much less a sworn statement, or asking the complainant any questions during the investigation. *Id.* at 664. The Seventh Circuit reasonably questioned how the committee could have conducted an evaluation of credibility under those circumstances.

Further, the Supreme Court has emphasized that "a fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). Biased decision-making does violate due process, but the party claiming bias has the heavy burden of "lay[ing] a specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable." *Hess v. Bd. of Trs. of S. Ill. Univ*, 839 F.3d 668, 675 (7th Cir. 2016). This is because "we presume that administrators are honest and impartial, and therefore 'capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Hess*, 839 F.3d at 675, *quoting Withrow*, 421 U.S. at 55. This presumption can be rebutted, such as by a showing that the adjudicator had a pecuniary interest in the outcome or had personal animosity towards the party. *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 716 (7th Cir. 2000), *citing Withrow*, 421 U.S. at 47. However, even when there is bias, courts have found that an opportunity to appeal the decision to an unbiased decision-maker adequately safeguards a plaintiff's due process rights. *Hess*, 839 F.3d at 677.

For example, in *Hess*[5], the plaintiff argued that his expulsion from his university violated his procedural due process rights because the adjudicator was biased against

---

[5] Plaintiff argues that *Hess* is inapposite because the decision was made after a motion for summary judgment, and therefore the plaintiff in that case had the benefit of discovery to support his case. This Court is mindful of the different standards at issue. Nevertheless, the principles at issue in *Hess* regarding the

him. *Id.* at 673. The Seventh Circuit found there was insufficient evidence to establish bias. *Id.* at 677. It also noted that even if there had been bias, the allegations "suffer[ed] from a fatal flaw" because the plaintiff was able to appeal the adjudicator's decision to a three-member panel of university employees, and later to the University Chancellor. *Id.* Because plaintiff did not claim that any of those individuals were biased, the Seventh Circuit found that plaintiff's due process rights were not violated. *Id.*

In this case, the University Handbook outlines the procedures in place for investigations such as the one at issue. Pursuant to the OSCR policy, students accused of sexual misconduct have a right to notice of the proceedings, participation in the administrative hearings, an investigative process, an ability to review and respond to the evidence, and the opportunity to bring an advisor with them to each phase of the proceedings. The policy ensures a measure of objectivity and notes: "All disciplinary decisions will be based on an objective evaluation of evidence." There are multiple stages in the process and opportunities for the accused to present evidence and challenge the objectivity of panelists. The investigators may participate in questioning and deliberating but they cannot vote with the panel. If formal sanctions are imposed against the student, the Panel provides the student with a rationale for the decision and any imposed sanctions. Both the accused and the complainant may appeal the decision of the panel based on procedural irregularity, new evidence, arguments that the investigator or panel members had a conflict of interest or bias that affected the outcome of the matter, and the

---

impact of bias on claims of procedural due process are relevant to the instant case and can be considered by this Court. *See Doe,* 928 F.3d at 664 (applying the principles outlined in *Hess* when considering a motion to dismiss).

sanctions imposed were not appropriate for the violations. If a student is dismissed from the University, that student may also petition for permission to re-enter the University.

Plaintiff does not dispute that he received notice of the allegations against him or that he was able to participate in the hearing against him. Instead, Plaintiff claims that the process was deficient because it did not afford him a meaningful opportunity to be heard as it was not a fair and impartial process. At this stage, the Court's task is not to determine whether the allegations are true, but instead to determine whether Plaintiff is entitled to relief if everything he says is true. *Doe*, 928 F.3d at 656.

As it relates to the investigators, Plaintiff argues that the investigators were biased against him and treated Roe more favorably. However, the investigators were not adjudicators in the disciplinary proceedings and could not vote to dismiss Plaintiff from the University. Further, Plaintiff was able to present evidence to the panel, even if the investigators had not considered it during the investigation. Therefore, the general allegations of bias against the investigators have little impact on this Court's analysis as to whether Plaintiff's procedural due process rights were adequately safeguarded.

Regarding the panel participants, Plaintiff also avers that they were biased against him. Plaintiff does not allege that any adjudicator had a pecuniary interest in the outcome or had a personal connection to Plaintiff. Plaintiff supports his claims of bias by alleging that: 1) Defendant Die, an advisor to the committee, was biased against men based on allegations from another, unrelated lawsuit; 2) Student 1 was biased because he tweeted support for survivors of sexual assault and raised funds for RAINN; and 3) Kristen

Wilcox, a panelist, posted tweets which criticized masculinity and mansplaining. Plaintiff does not allege that Panelist Laurie Andrews was biased against him.

Defendants argue that the allegations against Defendant Die refer to either *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 21-cv-2220, 2022 WL 3576242 (C.D. Ill. Aug. 18, 2022), in which the court dismissed the allegations against all defendants, including Die, or *Doe v. Bd. of Trs. of Univ. of Ill*, No. 17-cv-2180, 2018 WL 11269804 (C.D. Ill. July 24, 2018), in which the court granted summary judgment to the University. Plaintiff did not dispute this argument and did not argue that Die was ever found responsible for gender-based discrimination. Although this Court must accept all well-pleaded facts as true, the Court is not obligated to accept "sheer speculation, bald assertions, and unsupported conclusory statements" on a motion to dismiss. *Lanahan v. Cnty. of Cook*, 41 F4th 854, 862 (7th Cir. 2022). The Court finds Plaintiff's conclusory statement that "Die had a proclivity of being biased towards males," is insufficient to demonstrate an actual bias against Plaintiff.

As to the claims against Student 1 and Wilcox, Defendants argue that individuals who show support for feminism or against sexual assault are not necessarily incapable of being a fair and neutral judge as to whether a sexual assault occurred. General allegations regarding a panelist's support for victims of sexual assault or criticism over masculinity does not support the reasonable inference that a person is biased. The Court certainly hopes every panelist and individual involved in the disciplinary process is against sexual assault, as opposed to in favor of it. Plaintiff alleges the bias of the panelists impacted the proceedings against him. For instance, Plaintiff was told that a witness could not serve as

his advisor and that he was not permitted to introduce character evidence, even though Roe was able to do both. The panel also allowed the introduction of "victim-impact statements," criticized Plaintiff's delayed participation in the proceedings, and failed to explore inconsistencies with Roe's narrative. Student 1 also criticized Plaintiff for "mixing his medications." The crux of Plaintiff's argument is that he believes he was not treated the same as Roe during the proceedings through procedural discrepancies and general allegations of bias based on social media posts. Even when taking his allegations of bias as true, they simply do not rise to a constitutional violation. Plaintiff fails to allege any specific foundation of prejudice or prejudgment, such that the probability of actual bias is too high to be constitutionally tolerable. *Hess*, 839 F.3d at 675.

Unlike the plaintiff in *Doe*, Plaintiff was given numerous opportunities to present evidence and witnesses and to challenge the potential members of the panel. Although he was not able to present every single witness he would have liked, he did not allege that he was not entitled to present *any* evidence. Unlike the proceedings in *Doe*—which completely omitted any statement from the complainant--the panel in this case heard from Roe and found her to be more credible because Plaintiff had memory loss during the alleged incident.

However, even if the panelists were biased against Plaintiff during the proceedings, Plaintiff was able to, and did, appeal the panel's decision to another adjudicative body: Justin Brown. The panel's decision was considered and upheld after Brown's review. While Plaintiff alleges that Brown "refused to acknowledge or correct" the alleged procedural deficiencies, Plaintiff does not contend that Brown was biased

against him. Because the case was reviewed by an unbiased adjudicator, Plaintiff's claims

that the panel was biased against him "suffer[ ] from a fatal flaw." *Hess*, 839 F.3d at 677.

Therefore, the procedural safeguards afforded to Plaintiff were constitutionally adequate,

and Defendants' Motion to Dismiss is granted as to this count.

### 3. Declaratory Judgment

Under the Act, the Court "*may* declare the rights and other legal relations of any

interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "This

statutory text has long been understood to confer on federal courts unique and

substantial discretion in deciding whether to declare the rights of litigants." *Haze v.*

*Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018) (internal quotations omitted). That Act offers no

independent grant of jurisdiction for Plaintiff's federal claims. *Manley v. Law*, 889 F.3d

885, 893 (7th Cir. 2018). Further, if the Court "determines . . . that a declaratory judgment

will serve no useful purpose," it can deny the requested relief as a matter of "practicality

and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

If traditional remedies are sufficient, courts may properly dismiss a declaratory

judgment claim. *Layman v. City of Peoria, Illinois*, 352 F.Supp.3d 874, 878 (C.D. Ill. Nov. 8,

2018), *citing Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969). Likewise,

when the declaration sought by the plaintiff must necessarily be determined to resolve

the substantive suit, then the claim "serve[s] no useful purpose" and courts often dismiss

the claim. *Amari v. Radio Spirits, Inc.*, 219 F.Supp.2d 942, 944 (N.D. Ill. 2002) (dismissing a

declaratory judgment action in the interest of judicial economy because "the substantive

suit would resolve the issues raised by the declaratory judgment action").

Defendants argue that Count IV seeks a declaration on the same substantive issues raised in Counts I and II of the Complaint. Because Count II has been dismissed on the merits, the request for declaratory relief based on those rights must also be rejected. *See Manley*, 889 F.3d at 893. However, because Count I has not been dismissed, Plaintiff has sufficiently pled a claim that may justify the issuance of a declaratory judgment at a later stage of the proceedings. Therefore, Defendants' Motion to Dismiss Count IV is denied.

Defendants also argue that Count V seeks a declaration on the same substantive issue as Count III. The declaration sought in Count V would not serve the goals of the Declaratory Judgment Act. Determining whether Defendants breached the contract must necessarily be resolved by Count III. Therefore, the relief sought in Count V serves no useful purpose. *Amari*, 219 F.Supp.2d at 944.

## IV.     CONCLUSION

Accordingly, the Defendants' Motion to Dismiss (Doc. 19) is DENIED as to Count IV and GRANTED as to the following claims and defendants: 1) Counts II and IV; 2) Defendant Fleenor; 3) Title IX claims in Count I against individual defendants; 4) breach of contract claims against individual defendants in Count III; 5) injunctive relief claims against individual defendants in their individual capacity; and 6) monetary damages claims against individual defendants in their official capacities.

ENTER: September 25, 2024

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE