## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-cv-2091 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | |
| UNIVERSITY OF ILLINOIS, et al., | ) | |
| Defendants. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant's Motion for Reconsideration of the prior Order granting Plaintiff's Motion to Proceed under a Pseudonym. (Doc. 37).

## I.     BACKGROUND

In his complaint, Plaintiff seeks relief under Title IX and other theories following his suspension from the Carle Illinois College of Medicine at the University of Illinois Urbana Champaign following the University's determination that he was responsible for a sexual assault. (Doc. 1). At the outset of this litigation, the Court granted Plaintiff's unopposed motion to proceed under a pseudonym. (Text Order of June 29, 2023). The Court entered a Protective Order which provided that Plaintiff would pursue this litigation under the pseudonym "John Doe" and that the parties would refer to Plaintiff's ex-girlfriend as "Jane Roe." (Doc. 18 at 1).

On December 11, 2024, following the Seventh Circuit's decisions in *Doe v. Trustees of Indiana University*, 101 F.4th 485 (7th Cir. 2024) and *Doe v. Loyola University Chicago*, 100 F.4th 910 (7th Cir. 2024), Defendant Board of Trustees of the University of Illinois

("Defendant" or "University") moved for reconsideration of the Order granting Plaintiff's motion to proceed under a pseudonym, which Plaintiff and non-party Jane Roe oppose. (Docs. 37 and 38). On January 7, 2025, the Court held a video status conference wherein the parties and Jane Roe appeared and were given an opportunity to supplement their briefs. (Minute Entry of January 7, 2025). Defendant filed a brief supplementing its earlier motion while Jane Roe filed a pleading in opposition to the motion for reconsideration based on her concern that disclosing Plaintiff's real name in this case could allow others to identify her. (Docs. 41, 42). Defendant contends that the protections afforded to non-litigant students like Jane Roe under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"), are presumptively maintained by allowing pseudonym usage for Roe and other student witnesses, not by permitting Plaintiff to litigate anonymously. (Doc. 41 at 3).

## II.    DISCUSSION

In *Trustees of Indiana University*, the plaintiff was a medical student who was accused by his romantic partner of physical abuse. 101 F.4th at 488. While parties' names in federal litigation are typically public information, there are certain exceptions. *Id.* at 491. "A substantial risk of harm—either physical harm or retaliation by third parties, beyond the reaction legitimately attached to the truth of events as determined in court— may justify anonymity." *Id.* Plaintiffs are not allowed to proceed anonymously merely to avoid embarrassment. *Id.* "Title IX litigation is not an exception to the norm that adult litigants are identified by name." *Id.* at 493.

The Seventh Circuit also considered the plaintiff's use of a pseudonym in *Loyola University*, wherein the plaintiff was expelled after the university concluded he had engaged in sexual activity with a fellow student without her properly obtained consent. 100 F.4th at 912. While anonymity may be the norm in Title IX cases, it must be justified in each case. *Id.* at 913. The type of retaliation that might justify secrecy might include "animus toward people with unpopular religious beliefs," but not simply the possibility "that many people prefer to avoid dealing with wrongdoers." *Id.*

The court in *Loyola University* considered the possibility that identifying Doe would allow some people to infer Jane Roe's identity. *Id.* at 914. The university believed it was "unlikely that there are observers of this case who know enough about Doe's past romantic relationships and disciplinary history to discover the identity of the nonparties involved simply from having Doe's name made public." *Id.* The court of appeals noted another possibility is "that everyone who could put two and two together already has done so." *Id.* Those who might be able to identify the alleged victim after the disclosure of Doe's identity are people who knew they were dating before Doe's expulsion. *Id.* Those people likely were aware of the expulsion. *Id.* "If they did not put two and two together then, why would they do so now?" *Id.* Because there might be a reason the litigation could provide that information, even though the expulsion did not, the court of appeals observed that "[a]n evidentiary hearing could explore the subject, perhaps with input from Roe about the possible effect of disclosing Doe's identity." *Id.*

While noting that courts often provide anonymity to victims of sex crimes, "and perhaps that is the best analogy for Roe," the court in *Loyola University* "question[ed]

whether Roe has a legal entitlement to concealment. *Id.* The court of appeals also questioned whether 20 U.S.C. § 1232g(b), which restricts institutions that receive federal funds from releasing educational records in certain circumstances, offers Roe some protection. *Id.* That issue was flagged but not resolved in *Indiana University* and the court lacked the benefit of adversarial briefing to resolve the issue in *Loyola University*. *Id.*

Like *Indiana University*, the court of appeals remanded *Loyola University* to the district court so that plaintiff could decide whether to dismiss the suit instead of revealing his name. *Id.* The court in *Loyola University* also directed the district judge to decide whether Roe is entitled to anonymity and, if so, whether putting Doe's name in the court record would be equivalent to revealing *Roe*'s identity as well. *Id.*

A unique issue presented in this case is that Plaintiff was found responsible for sexual misconduct and, on a different occasion, after filing a complaint against Jane Roe, Plaintiff also was found to be a victim of sexual misconduct perpetrated by Roe. (Doc. 37 at 6). Roe disputes the allegations against her while also contending the process was unfair to her. (Doc. 42 at 2). She also states that her sanction was to write a paper and remain on probation for one year, after which her record was cleared of misconduct. (*Id.*) While the Court presumes that greater confidentiality protections are warranted for sexual misconduct victims as the Seventh Circuit suggested, *see Loyola University*, 100 F.4th at 914, the Court concludes that anonymity on that basis does not extend to Plaintiff here because his complaint focuses on what he alleges were improper and unfair proceedings which resulted in a finding that he was responsible for sexual misconduct, thereby leading to his dismissal from the University. This case does not concern the

allegations made by John Doe against Jane Roe.[1] The Court will turn to whether the disclosure of Plaintiff's real name in this case would allow others to identify Jane Roe.

Attached to Defendant's brief is the declaration of Robert Wilczynski, the Director of the Office of Student Conflict Resolution ("OSCR") at the University, who described the nature of OSCR's investigation. (Doc. 41-1). In addition to interviewing John Doe and Jane Roe, investigators sought to interview 10 other witnesses, including two of their medical school classmates. (*Id.* at 2). Each of the 10 potential witnesses were informed in writing of the existence of the sexual misconduct allegations using John's and Jane's real names. (*Id.*) Nine witnesses agreed to and were interviewed by OSCR investigators regarding Jane Roe's allegations. One such witness was a medical school classmate of John Doe and Jane Roe. (*Id.*) Six of the witnesses who were interviewed were friends of Roe's at other schools to whom she had talked regarding her interactions with Doe and the sexual conduct at issues in her OSCR complaint. (*Id.*) Four of those six witnesses were medical school students who Roe had met through her involvement with the American Medical Association. (*Id.*)  Wilczynski further stated that, during OSCR's investigation of John Doe's sexual misconduct complaint against Jane Roe, investigators interviewed Doe, Roe, and three other witnesses—one of whom was also interviewed in the investigation of Roe's complaint. (*Id.*)

---

[1] For the same reason, to the extent that Jane Roe bases her opposition to disclosing Plaintiff's identity on the fact that this litigation includes allegations about Roe's alleged conduct toward Doe with which she disputes and claims are false, the Court is not considering any argument by Roe that Doe's identity should not be disclosed on that basis.

Plaintiff and Jane Roe indicate they were part of the inaugural class of 32 medical students, all of whom were aware of their romantic relationship. Jane Roe believes that any of those students who are now doctors would be able to deduce that the allegations in this lawsuit concern Roe simply by knowing the identity of John Doe. Given the relatively small size of the medical community, the disclosure of Plaintiff's identity could affect Jane Roe's future employment or other professional opportunities and future earning capacity. According to Jane Roe, the relatively few witnesses who were interviewed in the University's investigation—some of whom were not affiliated with the University—were asked fairly generic and open-ended questions that did not disclose the nature of the allegations or details in the complaint. Plaintiff and Jane Roe believe that, in addition to their classmates and others affiliated with the medical school, any of the individuals who were interviewed as part of the investigation would be able to identify Jane Roe if John Doe's name were disclosed.

For many of those same reasons, Defendant believes it is highly unlikely that the disclosure of Plaintiff's real name in case pleadings would change the status quo by expanding the group of people who can identify Jane Roe such that Plaintiff should remain anonymous to protect Roe's privacy interests. Based on the fact that the complaint identifies Plaintiff and Jane Roe as second year medical students in the spring of 2020 and thus members of the inaugural medical school class and given the small size of the class and the fact it was then the only medical school class, it is likely other students as well as faculty and staff were aware of their relationship. Additionally, the complaint includes

other potentially identifying details about Plaintiff and Jane Roe that members of the medical school community might recognize.

Defendant further notes that, based on the extent of the internal investigations of the sexual misconduct allegations, certain information about Plaintiff and Jane Roe (using their real names) had already spread among people both within and outside the medical school community. Thus, at least 12 other people who the University sought to interview could likely identify John Doe and Jane Roe by viewing the anonymized pleadings. Defendant contends this expands the number of people who can already identify Jane Roe from the pleadings despite the use of pseudonyms and renders it less likely that removing Plaintiff's pseudonym would increase the number of people who can identify Roe from the pleadings.

Defendant next alleges that disclosing Plaintiff's name but maintaining the use of the "Jane Roe" pseudonym would not lead anyone conducting online research concerning Roe by using her real name to find evidence of this litigation. The Court previously observed in considering a similar issue "that most civil lawsuits do not receive any media attention. Moreover, it is unknown whether anyone who knows Doe or Roe would ever avail themselves of the opportunity to view the civil docket in this case." (Doc. 37-1 at 6). Therefore, Defendant contends that lowers the risk that disclosing Plaintiff's real name would enable people who could not already identify Jane Roe to do so.

Based on the particular circumstances of this case—including the small size of the medical school and medical community in Central Illinois—the Court believes the risk is

minimal that disclosure of John Doe's identity would enable people who are not already able to identify Jane Roe based on the existing pleadings to be able to infer her identity. There are a significant number of people who knew Plaintiff and Jane Roe were dating, that Plaintiff was dismissed from medical school, and/or were aware of the allegations of sexual misconduct between the two. Any of those individuals would already be able to identify Jane Roe from the existing pleadings. Additionally, it is likely there are other individuals who may not be familiar with the allegations of sexual misconduct but know Plaintiff's and Jane Roe's real names and other information about them such that, if they reviewed the pleadings, they could readily discern Roe's identity despite the use of the John Doe pseudonym. Because of the small size of the class and medical school community and the number of witnesses contacted during the investigation, it also is likely that other students, faculty, and staff could identify Jane Roe from the detailed allegations in the complaint notwithstanding the use of pseudonyms.

The Court further notes that the disclosure of Plaintiff's real name while maintaining the use of Jane Roe's pseudonym would not enable anyone conducting online research regarding Jane, using her real name, to find evidence of this litigation. Additionally, it seems unlikely this case will attract media attention or that the public docket will be viewed by anyone who knows John Doe or Jane Roe. This further limits the risk that the disclosure of Plaintiff's name in court filings would enable people to identify Jane Roe who otherwise could not.

For all of these reasons, the Court believes that the individuals who might be able to identify Jane Roe if Plaintiff's name is listed in the pleadings have already been able to

"put two and two together," significantly limiting any risk that removing Plaintiff's pseudonym would meaningfully expand the range of people who could identify Jane. Pursuant to the standards articulated by the Seventh Circuit in *Indiana University* and *Loyola University*, the Court finds no basis to continue to allow Plaintiff to proceed anonymously.

For the reasons stated herein, Defendant's Motion for Reconsideration of the prior Order granting Plaintiff's Motion to Proceed under a Pseudonym [Doc. 37] is GRANTED. Plaintiff must litigate under his real name. Because Plaintiff was initially allowed to pursue the suit anonymously, he is entitled to an opportunity to dismiss the suit under Federal Rule of Civil Procedure 41(a) if he wishes. *See Indiana Univ.*, 101 F.4th at 493. Plaintiff John Doe shall reveal his name within 14 days if he wishes to proceed with the litigation. If Plaintiff elects not to reveal his name, the complaint will be dismissed without prejudice. The parties are directed to send a copy of this Order to counsel for non-party Jane Roe.

ENTER: June 26, 2025

                            /s/ Colleen R. Lawless
                        COLLEEN R. LAWLESS
                        UNITED STATES DISTRICT JUDGE